THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID LYNN MITCHELL, Defendant-Appellant.

Second District   No. 2—90—0281

Opinion filed March 11, 1992.—Rehearing denied April 6, 1992.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

The defendant, David Lynn Mitchell, was charged by information with criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(3)) and aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)). Following a jury trial, defendant was found guilty of both offenses. The trial judge granted defendant's motion for a new trial as to the criminal sexual assault conviction and denied the motion as to the aggravated criminal sexual assault conviction. Defendant was subsequently sentenced to 15 years' imprisonment on the aggravated criminal sexual assault conviction, and this timely appeal followed.

On appeal, defendant contends that: (1) he was denied a fair trial due to (a) prosecutorial misconduct and (b) ineffective assistance of defense counsel; (2) he was not proved guilty beyond a reasonable doubt; and (3) he was denied a fair trial when the trial court improperly admitted into evidence a videotaped statement made by the complainant prior to trial. Based on our resolution of this last issue, we reverse defendant's conviction and remand for a new trial.

Prior to trial the Ogle County State's Attorney indicated that a videotape of the complainant had been given to defense counsel. At

that time, defense counsel stated that, since he was not present when the videotape was made, he intended to object to the use of the tape at trial. The trial judge indicated that he would defer ruling on the matter.

The following evidence was adduced at trial. The complainant, H.G., was nine years old at the time of the alleged assault in February 1989 and 10 years old at the time of trial in October 1989. H.G. testified that, one day during the previous school year, her mother called her at school and told her that she was going to Polo, Illinois, for the afternoon. H.G.'s mother told her to go home after school and said that defendant would be at home. Defendant was a friend of H.G.'s mother who had been staying at their house.

H.G. stated that, when she got home that afternoon, defendant was there. She went into her room, did some homework and then started a puzzle. As H.G. was starting her puzzle, defendant came in to the room, grabbed H.G.'s hand and pulled her into her mother's bedroom. Defendant then removed both H.G.'s jeans and shirt and his own jeans and shirt. As H.G. was lying on her mother's bed on her back, defendant got on top of her and "tried to put his private part inside [hers]." H.G. further testified that by "private part" she was referring to the area "between the legs" and "below the belly button." H.G. said that it hurt when defendant did this.

H.G. also stated that defendant put his mouth on other parts of her body. She said that defendant sucked on her chest and "between the legs." Next, H.G. stated that defendant put his hands on his own "private part" and rubbed up and down. H.G. added that "[w]hite stuff" came out of defendant's private part and went onto the bed, H.G. and defendant. H.G. then demonstrated what had occurred using anatomically correct dolls.

On cross-examination, H.G. recalled that she and her mother had gone on rides with defendant, who was a truck driver, including trips to Des Moines, Iowa, and to Minnesota. H.G. stated that the Des Moines trip caused her to miss a few days of school. H.G. also admitted that on prior occasions she had told people that defendant was wearing a robe when the offense occurred. H.G. indicated that she had been thinking of the next evening on which defendant had worn a robe.

H.G.'s mother, Stephanie, also testified. Stephanie stated that she was a former truck driver and that she met defendant through her truck-driving friends in February 1989 at a restaurant in Rochelle, Illinois. On the night of February 10, defendant called Stephanie and asked her to pick him up at a truck stop. When Stephanie picked him

up, defendant told her that he had been fired. Stephanie then brought defendant back to her home, where he stayed with her and H.G. for about 10 days. Stephanie stated that, after 10 days, she told defendant to leave because she was the recipient of an Ogle County Housing Authority grant, which would not allow her to have anyone live with her for more than 14 consecutive days. Defendant moved out on February 21.

On February 17, defendant was still living in Stephanie's apartment. Stephanie stated that, on that date, she had to go to Polo, Illinois, to deliver some papers to the Housing Authority. Before leaving, she called H.G.'s school and left a message that H.G. should go straight home after school and that defendant would be there waiting for her. Stephanie left for Polo at 2:30 p.m. and returned home between 4:30 and 5 p.m.

A week to 10 days after defendant moved out, H.G. complained of feeling a burning sensation when she urinated. Stephanie took H.G. to a doctor where certain cultures were taken. During a follow-up visit, Dr. William Johanson told Stephanie that something had happened to H.G. According to Stephanie, H.G. then stated that defendant had molested her. Dr. Johanson and his nurse were also present when H.G. made that statement. Dr. Johanson told Stephanie that he would have to report the situation to the Department of Children and Family Services (DCFS). Stephanie then went home and called the police. Thereafter, Marie Flosi of DCFS and Detective Robbie Buck of the Rochelle police department came to talk to Stephanie.

On cross-examination, Stephanie stated that she and H.G. never rode to Minnesota with defendant. She admitted that they did go with defendant to Joslyn, Illinois, on one occasion and that, on another, they drove to Des Moines in the middle of the night to meet defendant at a motel room. Stephanie stated that she and H.G. did not spend the night with defendant in Des Moines; rather, they spent a few hours at defendant's motel room and then returned to Rochelle. Stephanie was also called to the stand as an adverse witness during defendant's case in chief. Stephanie then admitted that she and defendant had had sex during their relationship and that she did not have herpes.

Marie Flosi testified that she was an investigator for DCFS. On March 21, 1989, she participated in the investigation of the report of sexual abuse involving H.G. Flosi, along with Detective Buck and Assistant State's Attorney Robin Minnis, had a conversation with H.G. in the Ogle County courthouse building regarding the incident. The conversation was videotaped. Flosi also acknowledged that, prior to

the day on which the videotape was made, she and Detective Buck interviewed H.G. at the Rochelle police department for about one-half hour. According to Flosi's notes taken on March 15, H.G. told her that defendant was wearing a robe when the incident took place.

The State subsequently played for the jury the videotape of the March 21 interview wherein H.G. detailed for Detective Buck, Ms. Flosi and Assistant State's Attorney Minnis the facts surrounding the alleged sexual assault. While we note that some discrepancies do exist, for the most part, H.G.'s statements on the videotape were consistent with her testimony at trial. The State then rested its case.

The defendant testified in his own behalf and stated that he was a 44-year-old truck driver. He worked out of "Esterville [sic], Iowa," for the Holiday Express trucking company. Sometime late in December 1988 or early in January 1989 defendant was dispatched to the Rochelle, Illinois, area to pick up a load at a company called FDL to take to the Hormel Company in Jackson, Minnesota. During a delay in the loading of his truck, defendant went to the Oaks Restaurant, which was frequented by truckers in the Rochelle area. It was at the Oaks Restaurant that defendant met Stephanie at 4 or 5 p.m.

Defendant and Stephanie spent the evening together going to bars. At about 11 p.m., Stephanie went back to FDL with defendant to get his loaded truck. Stephanie and defendant then rode in the truck together back to the Oaks Restaurant, where they parked. They sat and talked and then climbed into the sleeper portion of the truck cab and had sexual intercourse. The next morning, defendant went with Stephanie to her apartment to freshen up and then proceeded to Minnesota alone. During parts of January and February 1989 defendant, Stephanie and H.G. traveled together in defendant's truck to such places as Joslyn, Illinois; Des Moines, Iowa; Jackson, Minnesota; and New York. Defendant and Stephanie were sexually active during this period, and on occasion, H.G. witnessed defendant and Stephanie engaging in sex.

On February 10 defendant went to the Tiki truck stop before leaving for New York. He discovered that his fuel card had been shut off and later learned that he had been fired because he had been seen with an unauthorized passenger aboard his truck. Defendant called Stephanie, who picked him up at the Tiki truck stop and brought him back to her apartment. On February 17, the day of the alleged sexual assault, defendant was still living there. That morning Stephanie told defendant that she had to go to Polo, Illinois, to take some papers to the Housing Authority. Stephanie told defendant that she did not want him to come along because, under the Housing Authority's

rules, she was not supposed to have anyone staying with her. She also stated that she would be back in time to pick up H.G. from school.

H.G. arrived home before Stephanie did, arriving at about 3:30 p.m. Defendant was in a sleeping bag watching television on the living room floor when H.G. came in. H.G. did homework for 15 or 20 minutes and then came into the living room to watch cartoons. Defendant went into the kitchen and made sandwiches for H.G. and himself. Stephanie returned home between 7 and 8 p.m. Later, waitresses at the Oaks Restaurant told defendant that Stephanie had been there for three or four hours on the afternoon of February 17. Defendant denied having any physical contact, sexual or otherwise, with H.G. on February 17.

According to defendant, he and Stephanie argued on February 17 when Stephanie returned home and on February 19 regarding how Stephanie was spending defendant's money. Another argument on February 20 led defendant to move out of Stephanie's apartment on the 21st. Defendant stated that he was not then, nor had he ever been, infected with herpes. He also stated that he did not use any form of protection against conception or disease when he and Stephanie engaged in sexual activity.

Rose Walton also testified on defendant's behalf and stated that she had known defendant for five years. Walton stated that she and defendant were lovers and that she had been intimate with defendant. She stated that they had been intimate on five or six occasions since December 1988 and that some of these instances of intimacy occurred after February and March 1989. Ms. Walton stated that she did not have herpes and that, as a nurse, she had been trained to recognize the symptoms of herpes. Walton also stated that she had never seen any signs of herpes on defendant.

The State presented several rebuttal witnesses, including Dr. William Johanson. Dr. Johanson testified that he examined H.G. in March 1989. H.G. had been seen by Dr. Nyquist previously on March 3. H.G. had displayed external symptoms that indicated the presence of herpes. Dr. Nyquist took specimens for laboratory tests, and Dr. Johanson received these test results on March 14. The test results indicated that H.G. had herpes simplex II, a sexually transmitted disease.

After reviewing the test results, Dr. Johanson saw Stephanie and H.G. at his office. First, he told Stephanie that H.G. had herpes and that he would have to question her regarding how she had contracted it. Then, in Stephanie's presence, H.G. mentioned that she might have been touched by a "boyfriend." She did not state any specific names. Dr. Johanson then reported the circumstances of H.G.'s condition to

DCFS and the Health Department, and a follow-up investigation was arranged.

Dr. Johanson indicated that a person's first episode of herpes is usually very noticeable, involving soreness, a fever, as well as blisters and lesions. Subsequent episodes can be relatively asymptomatic and may appear as only a skin irritation. The initial attack occurs one to two weeks after the disease is contracted. Dr. Johanson said that herpes is not flagrantly contagious, and the fact that one person who had sex with an infected person contracted the disease does not mean that another person who had sex with the same infected person at about the same time necessarily would contract the disease as well. Additionally, the parties stipulated that, if a qualified expert were called to testify, he would state that there is no scientific test which could prove or disprove that defendant had herpes. This is because the only tests available must be performed when open lesions are present.

During deliberations, the jury made several requests to review H.G.'s videotaped testimony. Defense counsel objected to reshowing the tape, arguing that it would unduly emphasize the taped testimony. Defense counsel also noted that he was not present when the tape was made and that H.G. was not cross-examined at that time. The trial court ultimately granted the jury's request and allowed the videotape to be shown again. The jury subsequently returned verdicts of guilty on both counts of criminal sexual assault and aggravated criminal sexual assault.

The parties appeared in court again on November 11, 1989, at which time defendant's trial counsel told the court that defendant was raising his ineffectiveness in a *pro se* post-trial motion. Trial counsel was given leave to withdraw, and Ogle County Public Defender George Fischer was appointed to represent defendant. The trial court subsequently allowed defendant's request that his conviction of criminal sexual assault be reversed but denied all other requests for relief. Defendant was then sentenced to a 15-year term of imprisonment on the aggravated criminal sexual assault conviction.

As indicated earlier, we will first address defendant's argument that the trial court erred in admitting into evidence a videotaped statement made by H.G. prior to trial. Specifically, defendant maintains that the videotape, which the jury was allowed to view and listen to twice, unfairly bolstered H.G.'s trial testimony, thus denying him a fair trial. We agree that the trial court committed reversible error when it allowed the State to present this videotape evidence to the jury.

■ Initially, the State responds to defendant's argument by pointing out that, although defense counsel objected to the admission of the videotape prior to trial and prior to the reshowing of the tape during jury deliberations and raised the issue in a post-trial motion, counsel nevertheless acquiesced to the showing of the tape during trial. The State maintains, therefore, that this issue has been waived. Although the State's argument in this regard is well taken, such issues may still be considered on appeal where the failure to object is claimed, as it is here, to result from the ineffective assistance of counsel. (*People v. Emerson* (1987), 122 Ill. 2d 411, 434.) We shall therefore examine defendant's argument on the merits.

■ Defendant contends that the trial court erred in holding that the videotape was admissible pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 115—10). The State contends that the court's holding regarding section 115—10 was correct. However, both defendant and the State have confused what the trial court actually said. In ruling on defendant's post-trial motion, the trial judge stated, in part, that the videotaped testimony was "probably admissible under 115—10.1." Thus, contrary to both parties' arguments, the trial court was apparently relying on section 115—10.1 of the Code, not section 115—10, in support of its ruling. However, the trial court then directed defense counsel's attention to *People v. Rocha* (1989), 191 Ill. App. 3d 529, which addresses section 115—10, as further authority for admission of the video. Regardless of whether the trial court was relying on section 115—10 or section 115—10.1, however, we believe the admission of the videotape was improper.

We first address the applicability of section 115—10.1 of the Code. Section 115—10.1 provides, in pertinent part, as follows:

"§115—10.1. Admissibility of Prior Inconsistent Statements. In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—
***

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
* * *

(C) the statement is proved to have been accurately re-

corded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1.

At the hearing on defendant's post-trial motion, the State noted that there appeared to be "several discrepancies in the child's statement" and that therefore the videotape might be admissible as a prior inconsistent statement pursuant to section 115—10.1. We disagree. Under the circumstances of this case, we can perceive of absolutely no reason why the State would want to introduce the prior *inconsistent* statements of the complainant. Rather, we believe the State, through the use of the videotape, was clearly attempting to corroborate or bolster H.G.'s in-court testimony with her generally *consistent* statements contained on the video. As such, the videotaped statement was not admissible under section 115—10.1 as a prior inconsistent statement.

We next address the applicability of section 115—10 of the Code, which provides, in part, as follows:

"§115—10. (a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.)

Defendant maintains that the use of videotaped statements as a corroborative complaint is not contemplated by section 115—10. We agree.

It is often stated that the fundamental rule of statutory construction is to give effect to the intent of the legislature. (*People v. Parker* (1988), 123 Ill. 2d 204, 209.) It is presumed that the legislature, in enacting various statutes, acts rationally and with full knowledge of all previous enactments. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 248.) Moreover, penal statutes must be strictly construed and may not be extended in their application to matters which do not, by the strictest construction, come under their provisions. *People v. Parvin* (1987), 164 Ill. App. 3d 29, 34.

A plain reading of section 115—10 reveals that the statute does not expressly or affirmatively provide for the introduction of prior *videotaped* statements of a complainant. On the other hand, section 115—10.1 of the Code, referenced above, specifically provides that certain videotaped statements may be admissible as prior inconsistent statements. (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1.) In addition, former section 106A—2 of the Code specifically provided for the admission into evidence of videotaped statements or testimony of child witnesses in sexual assault cases. (Ill. Rev. Stat. 1987, ch. 38, par. 106A—2.) This statute was subsequently declared unconstitutional in *People v. Bastien* (1989), 129 Ill. 2d 64, and repealed by Public Act 87—345 (Pub. Act 87—345, eff. Jan. 1, 1992 (repealing Ill. Rev. Stat. 1987, ch. 38, par. 106A—2)).

We believe that the inclusion of specific language by the legislature in sections 106A—2 and 115—10.1 of the Code, allowing the use of videotaped statements with regard to child witnesses and prior inconsistent statements, and the omission of similar language from section 115—10, evinces a legislative intent to refrain from allowing the introduction of such statements or testimony in the form of a corroborative complaint. It would have been a simple matter for the legislature to indicate that videotaped statements were admissible under section 115—10. The legislature did not do so. We must, therefore, conclude that section 115—10 of the Code does not contemplate or allow the admission of such evidence.

In his reply brief, defendant notes that *People v. Velasco* (1991), 216 Ill. App. 3d 578, could be interpreted to stand for a contrary proposition. In *Velasco*, the complainant in a criminal sexual assault prosecution was a 31-year-old woman with Down's syndrome. At trial, the State introduced into evidence and played for the jury a videotape of the complainant's interview with the police. On appeal, the court found that "the trial court improperly admitted the videotape under section 115—10 of the Code, which permits admission of videotape evidence in a 'prosecution for a sexual act perpetrated upon a child un-

der the age of 13.' " (*Velasco*, 216 Ill. App. 3d at 585, quoting Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a).) The court concluded that section 115—10 was not applicable to the facts of that case since the complainant, at 31 years of age, did not fall within the statute's express terms. 216 Ill. App. 3d at 585.

The *Velasco* court, however, provides no analysis and cites no authority, other than the statute itself, in support of its statement that section 115—10 "permits admission of videotape evidence." As noted above, we interpret section 115—10 differently. We therefore decline to follow the *Velasco dictum.*

Additionally, we disagree with the State's contention that this court's decision in *People v. Rocha* (1989), 191 Ill. App. 3d 529, is dispositive of this issue. The issue to be decided in *Rocha* was whether a three-year-old child complainant, unable to testify because of fear, inability to communicate in a courtroom setting, or incompetence, was "unavailable" within the meaning of section 115—10(b)(2). We answered that question in the affirmative and went on to state that section 115—10 did not violate any right of the defendant to confront the witnesses against him. *Rocha*, 191 Ill. App. 3d at 539, 543.

In the instant case, there was no question regarding H.G.'s availability to testify. More importantly, *Rocha* did not involve the use of a child witness' videotaped statements or testimony. As such, we do not view our decision in *Rocha* as dispositive of the specific issue presented in this case.

■ Rather, we agree with defendant that a resolution of this issue should be guided by the reasoning of the Illinois Supreme Court in *People v. Bastien* (1989), 129 Ill. 2d 64. At issue in *Bastien* was whether section 106A—2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 106A—2) violated the defendant's right to confront witnesses against him, as guaranteed by the United States and Illinois Constitutions. (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8.) Section 106A—2 provided as follows:

> "§106A—2. (a) Upon motion of the State at any time before the trial of the defendant begins, the court may order that a child's oral statement or testimony be recorded. The recording shall be made in the presence of the court, the attorneys for the defendant and for the prosecution and, in addition, may be made in the presence of the operator of the recording equipment, necessary security personnel, and any person who, in the court's discretion would contribute to the welfare and well-being of the child. The defendant shall be permitted to be present at the making of the recording. Only the attorney for the pros-

ecution or the court may question the child. The court shall rule on evidentiary objections of the attorney for the defendant.

(b) The recording, or portions of the recording, may be admissible into evidence upon motion of either the State or the defendant, provided:

(1) the recording is both visual and aural and is recorded on film or video tape or by other electronic means;

(2) the recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered;

(3) every voice on the recording and every person present at the making of the recording is identified;

(4) the statement was not made in response to questioning calculated to lead the child to make a particular statement;

(5) the defendant or the attorney for the defendant is afforded the opportunity to view the recording before it is offered into evidence;

(6) the child is available to testify at trial; and

(7) the defendant or the attorney for the defendant is afforded the opportunity to cross examine the child at trial." Ill. Rev. Stat. 1987, ch. 38, par. 106A—2.

In finding section 106A—2 unconstitutional, the supreme court addressed the danger presented by the delayed cross-examination authorized by the statute. The court noted that the videotaping and the trial would likely take place months apart and, during that time, a child witness would have contact with prosecutors and relatives who could influence the child. The court then concluded that "the statute, by prohibiting contemporaneous cross-examination, unnecessarily and impermissibly infringes on an accused's right of confrontation." (*Bastien*, 129 Ill. 2d at 77.) The court added that, "Under the terms of the statute, the child witness *must* be available to testify and to submit to cross-examination at trial; thus, 'there is little justification for relying on the weaker version'—the videotaped statement." (Emphasis in original.) 129 Ill. 2d at 78.

It is also important to note that, while the *Bastien* court was concerned primarily with the constitutionality of section 106A—2, it was well aware of the existence of other Illinois statutory exceptions to the rule against hearsay. In this regard, the court specifically mentioned sections 115—10 and 115—13 of the Code. (Ill. Rev. Stat. 1987, ch. 38, pars. 115—10, 115—13; *Bastien*, 129 Ill. 2d at 70.) Nevertheless, after concluding that the videotaped statement authorized by section 106A—2 was pure hearsay, and although it was clearly aware

of the existence of section 115—10, the court stated that its research revealed "no exception to the rule against hearsay recognized by Illinois which would allow the introduction of such hearsay." (129 Ill. 2d at 74.) If the State's argument in the instant case was correct, the *Bastien* court could, and should, have held that the facts in that case fell within the scope of section 115—10. The court, however, did not so hold.

As stated, we believe our resolution of this issue should be guided by *Bastien*. Here, the State, by the way in which it used the videotaped evidence, did that which the supreme court expressly disallowed in *Bastien*. Thus, even though we are concerned with the admissibility of evidence pursuant to section 115—10, rather than section 106A—2, we hold that the use of H.G.'s videotaped testimony at trial operated to deny defendant's right of confrontation.

In *People v. Rocha*, we opined that the *Bastien* court could not have "intended to suggest that every out-of-court statement offered into evidence must be subject to contemporaneous cross-examination." (*Rocha*, 191 Ill. App. 3d at 543.) This, of course, is true. For the reasons stated above, however, we do believe that the *Bastien* court did in fact intend to hold specifically that the type of videotaped statements at issue in this case must be subject to contemporaneous cross-examination.

Finally, we do not believe the erroneous admission of this evidence to be merely cumulative in nature and therefore harmless error. We agree with defendant that the evidence was relatively close, in that a resolution of the case basically came down to the jury's determinations regarding the credibility of defendant and H.G. Moreover, the videotape was clearly an important piece of evidence to the jury, which made four separate requests during deliberations to listen to and view it again. The jury therefore heard and saw H.G.'s account of this incident three times, once by way of her in-court testimony, and twice by way of the videotaped statement. Under these circumstances, we fail to see how this evidence could not have had a prejudicial effect on the jury. Accordingly, we hold that defendant's conviction must be reversed and the case remanded for a new trial in view of the improper admission of the videotaped statements.

■ Defendant also raises two other trial-related issues. He contends that he was denied a fair trial due to prosecutorial misconduct and the ineffective assistance of counsel and that he was not proved guilty beyond a reasonable doubt. As to the first contention, these matters are not likely to recur on retrial and need not be further considered. As to the reasonable doubt contention, having reviewed the

evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found defendant guilty of aggravated criminal sexual assault beyond a reasonable doubt. (*People v. Schott* (1991), 145 Ill. 2d 188, 203.) Our finding in this regard is intended to protect defendant from the risk of being subjected to double jeopardy and does not constitute in any way an implication as to defendant's guilt or innocence which would be binding on retrial. *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10.

For all of the above-stated reasons, the judgment of the circuit court of Ogle County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

WOODWARD and GEIGER, JJ., concur.