THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALAN PETITT, Defendant-Appellant.

Second District   No. 2—91—0658

Opinion filed May 20, 1993.

134

Law Offices of Josette Skelnik, of Elgin (Josette Skelnik, of counsel), for appellant.

David R. Akemann, State's Attorney, of Geneva (William L. Browers, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:
Defendant, Alan Petitt, was convicted of aggravated criminal sexual abuse for intentionally fondling the vaginal area of a child under age 13. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i).) On appeal, defendant contends that: (1) there was insufficient evidence to find him guilty of the offense beyond a reasonable doubt; (2) evidence implying inappropriate contacts with other children was improperly admitted; (3) the court erroneously prevented a clinical psychologist from testifying as an expert for the defense; and (4) he was denied the effective assistance of counsel. For the following reasons, we reverse and remand.

In February or March 1989, L.R., the victim, slept over at the home of her friend, Amber Petitt. L.R. did not recall the exact date, but thought it was a Friday evening some time prior to March 11,

1989, which was her tenth birthday. L.R., defendant, and Amber were lying on the floor of the bedroom of defendant and his wife watching television. L.R. and Amber Petitt were scratching defendant's back. L.R. was dressed for bed in a nightshirt and underpants. Defendant was wearing only gym shorts. According to L.R., Amber fell asleep and defendant rubbed L.R. between her legs, in the vaginal area and outside of her underpants, for approximately five minutes. L.R. became frightened and told defendant she wanted to wake Amber and go to bed. Defendant replied that L.R. could wake Amber but what occurred would be their secret. When L.R. informed Amber of the incident when they went upstairs to Amber's bedroom, L.R. claims that Amber advised L.R. not to worry since defendant did the same to her on a prior occasion.

L.R. informed her mother, M.R., of this incident in October 1989. At L.R.'s request, M.R. refrained from informing L.R.'s father, a Kane County sheriff's deputy. L.R. believed her father would make a police report, and she was concerned about losing Amber's friendship. Instead, M.R. set up an appointment for L.R. to speak about the incident with Peggy Malesky, a social worker at L.R.'s school. According to Malesky, L.R. described a frightening experience where a friend's father touched her leg while she rubbed his back. After the first meeting with Malesky, L.R. did not describe the incident again. L.R. and Malesky met approximately three more times and talked about reducing stress. Although L.R. never told Malesky the name of the man or her friend, Malesky learned of defendant's identity from M.R. and filed a report with the Department of Children and Family Services (DCFS).

On December 7, 1989, L.R. told her father of the incident. The following day, investigator George Hallow from DCFS, two assistant Kane County State's Attorneys, and Batavia Detective Peter Swanson arrived at L.R.'s home and interviewed L.R. about the incident. Defendant was indicted on one count of aggravated criminal sexual abuse for intentionally fondling the vaginal area of a child under age 13. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i).) He was found guilty of the offense following a jury trial. Defendant was sentenced to 30 months' probation, was ordered to undergo counseling, to pay L.R.'s family $980 for her counseling expenses, and to pay court costs of $91. Defendant's post-trial motion was denied, and this appeal followed.

Defendant first contends that his conviction should be reversed because the evidence failed to prove him guilty of the offense beyond a reasonable doubt. A criminal conviction in a sex offense case will

not be overturned on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Schott* (1991), 145 Ill. 2d 188, 203; *People v. Collins* (1985), 106 Ill. 2d 237, 261.) The conviction will not be reversed if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Schott*, 145 Ill. 2d at 203.

To sustain its burden of proving a *prima facie* case of aggravated criminal sexual abuse, the State was required to prove that defendant, who was over 17 years of age, committed an act of "sexual conduct" with the victim, who was under 13 years of age. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—16(c)(1)(i), 12—15(2)(b).) "Sexual conduct" is defined in the Criminal Code of 1961 as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e).

This case was largely based on the jury's assessment of the credibility of L.R. and defendant. In addition to L.R.'s testimony about the incident, three witnesses testified for the State under section 115—10 of the Code of Criminal Procedure of 1963 concerning L.R.'s statements to them describing or complaining of the incident. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.) M.R., the victim's mother, testified that in October 1989, L.R. related an incident occurring prior to L.R.'s tenth birthday on March 11, 1989, where defendant "molested" her by rubbing L.R. between her legs. M.R. stated that L.R. did use the word "molest" to describe the incident. M.R. further testified that L.R. informed Amber of the incident, and Amber replied, "he's done that to me before. Let's just go to sleep." Peggy Malesky, the social worker at the victim's school, testified that M.R. set up an appointment for L.R. to speak with Malesky about the incident. Malesky stated that on November 9, 1989, L.R. told her that while she was staying overnight at a friend's home, the father of her friend touched her "leg" while she gave him a back rub. When Malesky asked where on her leg did the father touch her, L.R. indicated it was "about mid thigh." Malesky recalled that L.R. stated the incident occurred during the summer. George Hallow, an investigator for DCFS, testified that L.R. told him she was lying on the floor in Mr. and Mrs. Petitt's bedroom with Amber Petitt, defendant, and herself. Hallow described the room, related by L.R., as containing a dismantled water bed lying on the floor, a television, end table, and light. According to L.R., as re-

lated by Hallow, the only light in the bedroom came from the living room, and the door was cracked about four or five inches. L.R. stated that she was wearing a T-shirt and underpants while she and Amber were giving defendant a back rub. According to Hallow, L.R. informed him that after Amber fell asleep defendant "took his hand and placed it between her legs and up towards her crotch and started to rub her there" for approximately five minutes. When Hallow asked L.R. exactly where defendant touched her, L.R. indicated it was in the vaginal area outside of her underpants. Shirley Robinson, the State's expert on sexual abuse syndrome, was given a hypothetical situation reflecting the scenario in the instant case. It was Robinson's opinion that the characteristics of the hypothetical girl were "not inconsistent" with a sexually abused person.

Defendant contends that L.R.'s version of the incident is so "inherently improbable" that it raises a reasonable doubt of his guilt. L.R. was confused about the time the alleged incident occurred. At trial, L.R. insisted that it was on a Friday prior to her tenth birthday on March 11, 1989. However, she informed Malesky that the event occurred during the summer. L.R. reported the incident to her mother in October 1989, allegedly after viewing a film on sexual abuse at school. However, L.R. admitted that the video was shown during the previous school year. Although Shirley Robinson, the State's expert witness on sexual abuse syndrome, testified that victims often delay reporting the abuse, defendant asserts that L.R.'s credibility was impeached by failing to offer an explanation for the eight-month delay. Defendant notes that L.R. continued to socialize with Amber at the Petitt home during this time. At trial, defendant presented evidence that L.R. had a motive to fabricate. L.R. and Amber Petitt had a falling out immediately prior to the time she first reported the incident, and L.R. wrote letters to her teacher complaining that Amber was mad at her and did not want to be her friend.

Although defendant recalls that he may have received a back rub from Amber and L.R., as this activity was common in the Petitt home, he denies that he touched L.R. improperly. L.R. stated that the water bed in the room was dismantled. To counter L.R.'s recollection of the condition of the room at the time the incident allegedly occurred, several witnesses for the defense testified that they were friends of the Petitts and visited the home often. According to these witnesses, the Petitts remodeled their bedroom during June and November 1988, and the water bed was not dismantled in March 1989 as L.R. claims. To counter L.R.'s statement that the only light in the room came from the living room since the door was cracked open four

to five inches, these witnesses testified that the incident could not have occurred when the Petitts were remodeling, since the door to the bedroom was removed at this time. To counter L.R.'s recollection that the incident occurred just prior to March 11, 1989, the defense offered several alibi witnesses who testified of defendant's whereabouts on several Friday evenings in February and March 1989. Several witnesses who know defendant in the community due to his involvement in Scouts and foster parent activities unanimously testified that his reputation for truth and veracity and for morality and chastity was positive. Further, defendant indicates that L.R.'s report of the alleged incident is uncorroborated. The only evidence that was corroborated was that back rubs are common in the Petitt home. Although two former foster daughters testified that defendant scratched their backs, they denied that any improper contact occurred.

■ Defendant contends that the varying versions of the incident told by L.R., the motive to fabricate, the unexplained delay in reporting, and the contradictory testimony concerning the condition of the room where the incident allegedly occurred create a reasonable doubt of his guilt. We disagree. The State's expert testified that it is common for abuse victims to delay reporting the incident. Further, a complaint in a sexual abuse case need not be made within a definite time limit. A delay in reporting the incident may be reasonable if the victim's silence can be attributed to fear, shame, guilt, or embarrassment. *People v. Soler* (1992), 228 Ill. App. 3d 183, 199.

In this case, the record indicates that L.R. valued her friendship with Amber Petitt. Although the loss of Amber's friendship immediately prior to the time L.R. reported the incident indicates a motive to fabricate, there is no direct evidence indicating that the event did not occur. This case is largely based on the credibility of the witnesses. Our review of the record reveals that the inconsistencies in L.R.'s testimony are slight and indicate confusion over the exact time of the alleged event. Where minor inconsistencies or discrepancies exist in a complainant's testimony but do not detract from the reasonableness of the story as a whole, the complainant's testimony may be adequate to support a conviction of sexual abuse. (*Soler*, 228 Ill. App. 3d at 200.) Further, a child witness' failure to remember dates does not render the testimony unclear as a matter of law. (*People v. Hickox* (1990), 197 Ill. App. 3d 205, 213.) Our review of L.R.'s testimony reveals that it was not so unclear and inconsistent that it created serious doubts of her credibility. The jury heard all the evidence and was in a superior position to weigh the credibility of the witnesses and draw reasonable inferences from their testimony. Although

there were no witnesses to the offense other than the defendant and L.R., the testimony of a sexual abuse victim need not be clear and convincing or substantially corroborated in order to sustain a conviction. (*Schott*, 145 Ill. 2d at 203.) Viewing the evidence in the light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and double jeopardy has not attached. *People v. Lopez* (1987), 152 Ill. App. 3d 667, 682.

Next, defendant contends that he was denied a fair trial when the trial court admitted evidence implying inappropriate contacts with his daughter, Amber Petitt, and two former foster daughters. Although defendant's new counsel raised this issue in an amended post-trial motion, trial counsel failed to object when this testimony was admitted during trial. Both a trial objection and a written post-trial motion raising the issue are required to preserve alleged errors for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) However, the plain error doctrine may be invoked in criminal cases to review an error which has not been properly preserved for review if either the evidence is closely balanced or the error is of such magnitude that the defendant was denied a fair trial. (134 Ill. 2d R. 615(a); *People v. Psichalinos* (1992), 229 Ill. App. 3d 1058, 1065.) The evidence in this case was closely balanced. The trial was based largely on the jury's assessment of the credibility of L.R., section 115—10 witnesses, defendant, and defendant's alibi witnesses. In ruling on defendant's post-trial motion, the judge characterized this case as one "in which the jury verdict could have gone either way based on the evidence presented." Further, we believe that if the jury considered the evidence implying that defendant abused other children, defendant would have been denied a fair trial. Therefore, we will consider this issue on the merits notwithstanding the absence of a trial objection.

In this case, Jennifer Lanus and Amanda Prater, foster children living in the Petitt home at the time of the alleged incident, testified that defendant scratched their backs and the backs of other children and asked them and others to scratch his own back. They stated that he sometimes wore a shirt and other times did not. Lanus testified that defendant's actions in scratching her back and brushing her hair were "weird" and made her feel "uncomfortable." On cross-examination, Lanus explained that she may have felt uncomfortable because she was sexually abused by an adult male prior to her stay in the Petitt home. Amanda Prater testified that she was a foster child formerly living in the Petitt home. She stated that she occasionally allowed defendant to scratch her back, that she sometimes scratched

his back, and that both the girls and boys in the home sometimes scratched defendant's back. In response to the prosecutor's questioning, Prater denied that defendant ever woke her during the night.

Defendant contends that this testimony was unduly prejudicial because it implies improper contacts and should have been excluded. In child sexual abuse cases, acts of abuse with children other than the present complainant are not admissible as proof of the crime charged unless they show intent, motive, identity, absence of mistake, knowledge, common design, scheme or plan, or *modus operandi*. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364-65; *People v. Mason* (1991), 219 Ill. App. 3d 76, 80.) Our supreme court has even held that evidence of other offenses is admissible if relevant to establish any material issue other than the defendant's propensity to commit crime. (*People v. Stewart* (1984), 105 Ill. 2d 22, 62; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182.) Even if the evidence is admissible, the trial judge may exclude it if the prejudicial effect outweighs the probative value. (*People v. Lucas* (1992), 151 Ill. 2d 461, 486; *People v. Maxwell* (1992), 148 Ill. 2d 116, 130.) It is within the sound discretion of the trial court to determine whether the probative value of the evidence substantially outweighs the risk of unfair prejudice. (*People v. Manley* (1987), 163 Ill. App. 3d 950, 953.) Therefore, the trial court's decision to admit such evidence will not be overturned on review absent an abuse of discretion. *Illgen*, 145 Ill. 2d at 364.

■ Scratching one's back does not, by itself, constitute a crime, an offense, or even misconduct. Nevertheless, the testimony of Lanus and Prater was offered by the State for the purpose of suggesting that defendant scratched the backs of young girls as a prelude to sexual abuse. If Lanus and Prater related incidents of sexual abuse by defendant following back scratching, their testimony would be admissible as evidence of *modus operandi*, since the crimes would have shared " 'peculiar and distinctive common features so as to earmark both crimes as the handiwork of the defendant.' " (*People v. Jendras* (1991), 216 Ill. App. 3d 149, 159, quoting *People v. Esterline* (1987), 159 Ill. App. 3d 164, 169-70; see also *Soler*, 228 Ill. App. 3d at 203.) Since Lanus and Prater denied that defendant ever touched them improperly, their testimony bore no similarity to the illegal conduct described by L.R. and cannot be considered as evidence of other crimes.

It is arguable that testimony concerning the frequency of back-scratching instances in the Petitt home was admissible for the purpose of illustrating the relationship and familiarity between the parties, defendant's design or course of conduct, and to corroborate the complainant's testimony concerning the particular acts in support of

conviction. (See *Soler*, 228 Ill. App. 3d at 203; *People v. Diaz* (1990), 201 Ill. App. 3d 830, 837.) We again note that Lanus and Prater did not describe instances of abuse by defendant and are not complainants in this case. Therefore, their testimony is not probative of defendant's relationship with L.R. It was offered for the sole purpose of implying that defendant improperly touched young girls. Without any evidence that any improper touching occurred, their testimony was more prejudicial to defendant than probative. Accordingly, the trial court abused its discretion in failing to exclude or strike the portions of Lanus' and Prater's testimony implying improper contacts by defendant.

The impact of the improperly admitted testimony of Lanus and Prater was exacerbated by testimony that defendant had improper contacts with his own daughter, Amber Petitt. The jury heard four versions of how L.R. allegedly described the incident to Amber. L.R. testified on direct examination that, following the incident, she told Amber "her dad had like scared [her] and he made [her] feel scared inside." L.R. testified that Amber replied, "Don't worry about it, he's done that to me before." L.R. admitted on cross-examination that she did not describe the incident or tell Amber that defendant "molested" her. However, she testified that she told Amber defendant "abused [her] and scared [her]" and that she believed Amber understood how defendant allegedly "abused" her. L.R.'s mother, M.R., was allowed to repeat this assertion. M.R. testified that L.R. told her she described what happened to Amber, and Amber replied, "Oh, he's done that to me before." Next, Peggy Malesky, the social worker at L.R.'s school, testified that L.R. informed her that following the incident, L.R. told Amber defendant touched her leg, and Amber replied, " 'Oh, don't worry about it.' " Finally, George Hallow, the DCFS investigator, testified that L.R. told him that following the incident, she told Amber what defendant did to her, and Amber said, "Well, let's not tell anybody about this. Let's keep this a secret between us."

Section 115—10 of the Code of Criminal Procedure of 1963 is a statutory hearsay exception allowing a child to testify that he or she complained of sexual abuse to another. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(1).) The statute also provides a hearsay exception for out-of-court statements made by the child describing any act or detail which is an element of the sexual offense perpetrated upon the child. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(2).) Under section 115—10(a)(1), L.R. was allowed to testify that she told Amber what defendant allegedly did to her. However, L.R. was not entitled to relate the contents of Amber's response. Amber's response to L.R. is hearsay

which is not admissible under section 115—10. Section 115—10 cannot encompass double hearsay statements because they do not carry the indicia of reliability necessary for the admissibility of these type of statements.

M.R., Malesky, and Hallow were entitled under section 115—10(a)(2) to relate out-of-court statements L.R. made to them describing defendant's abusive acts. They testified that L.R. told Amber about the incident and that Amber advised L.R. not to worry because defendant did the same to her. M.R., Malesky, and Hallow were not present when L.R. allegedly told Amber about the incident. Their only knowledge that any conversation between L.R. and Amber occurred was from what L.R. told them. Section 115—10(a)(2) "clearly mandates that the testifying witness hear the child's remark personally." (People v. Mitchell (1992), 228 Ill. App. 3d 917, 932.) Allowing these witnesses to reveal the contents of L.R.'s alleged conversation with Amber was plain error, as these statements constitute inadmissible hearsay on hearsay because these witnesses did not hear the conversation.

Furthermore, their testimony was ambiguous and unduly prejudicial. The witnesses were clear in testifying that Amber responded to L.R. by advising her to keep defendant's actions a secret and not to worry because defendant had done the same thing to her. The content of Amber's reply directly depends on L.R.'s statements. However, the witnesses gave widely disparate versions of L.R.'s statements to Amber. M.R. and Hallow testified that L.R. described defendant's acts to Amber. Malesky testified that L.R. told Amber defendant touched her leg. Furthermore, Amber did not recall a conversation where L.R. told her that defendant touched her improperly. Amber testified that she suffers from arthritis and that defendant sometimes rubs her back and legs to alleviate the pain. Amber denied that defendant ever touched her improperly. The unsubstantiated assertions that defendant molested his own daughter were unduly prejudicial to defendant and constitute plain error.

Next, defendant contends that the court erred in ruling that Dr. Nicholas O'Riordan, a clinical psychologist, was not qualified to give expert testimony in the area of child sexual abuse. Shirley Robinson, a licensed clinical social worker specializing in child sexual abuse, was qualified as an expert for the State. Robinson was allowed to give opinions on post-traumatic child sexual abuse syndrome. The State posed a hypothetical situation similar to the instant case where (1) a 10-year-old girl was fondled on her vagina by the father of a friend; (2) the abuser told the victim not to tell anyone and that it would be

their secret; (3) the victim did not report the incident for eight months because she was afraid of losing the friendship of the abuser's daughter; (4) the victim became irritable, moody, and had trouble sleeping following the abuse; (5) the victim was initially reluctant to return to the home of the abuser but did return later; (6) the victim convinced her mother to keep the incident a secret from her father because he was a police officer and the victim was afraid her father would make a report; (7) the victim noticed increased frequency in using the bathroom following the abuse; and (8) the victim told a social worker that the abuser did not touch her vagina but merely touched her thigh. Robinson responded that, in her professional opinion, none of the above characteristics are inconsistent with a person who has been sexually abused. Robinson then elaborated, stating that most child victims delay reporting the incident and only realize its impact after viewing a video on sexual abuse. She stated reasons why victims become irritable and moody, have sleep disturbances, use the bathroom more frequently, and delay reporting the incident.

Dr. Nicholas O'Riordan, a clinical psychologist specializing in children and adolescents, was qualified by the court as an expert in psychology in general, but not in the area of child sexual abuse. When defense counsel attempted to elicit opinions from O'Riordan regarding child sexual abuse syndrome, the court sustained the State's objections. O'Riordan treated Amber Petitt following L.R.'s allegations of sexual abuse against defendant. When defense counsel attempted to have O'Riordan reveal the conclusions of his analysis of Amber, the court sustained the State's objection as irrelevant.

■■ We do not accept the State's contention that defendant has waived this argument on appeal by failing to raise an objection when the court refused to qualify O'Riordan as an expert in the area of child sexual abuse. Defense counsel attempted to qualify O'Riordan as an expert to render opinions on sexual abuse syndrome. His motion to qualify O'Riordan was refused by the court. It was not necessary that defense counsel object when the court sustained the State's objection to O'Riordan's qualification.

At the hearing on defendant's post-trial motion, the court refused to allow defense counsel's offer of proof where O'Riordan would relate what the substance of his testimony would have been had the court allowed him to render opinions on post-traumatic child sexual abuse syndrome and on his analysis of Amber Petitt. Instead, the court accepted counsel's summary of what O'Riordan's testimony would have been.

Where a witness is available to testify, an offer of proof should not be made by an attorney's recitation of the witness' proposed testimony. (*Mulhern v. Talk of the Town, Inc.* (1985), 138 Ill. App. 3d 829, 834.) However, the error will be preserved where an attorney makes an informal offer of proof relating the substance of the witness' proposed testimony with sufficient specificity. (*Mulhern*, 138 Ill. App. 3d at 834.) In this case, the proper procedure would have been to conduct an *in camera* offer of proof during trial where O'Riordan explained the substance of his proposed testimony. Contrary to the State's suggestion, however, defendant has preserved this issue for review by attempting to qualify O'Riordan as an expert during trial and raising the issue in his post-trial motion.

In his offer of proof, defense counsel stated that O'Riordan would have explained the theoretical basis of post-traumatic child sexual abuse syndrome, some of the pitfalls in L.R.'s testimony that the State's expert witness, Shirley Robinson, did not acknowledge, and psychological conditions other than sexual abuse that exhibit the same symptoms which Robinson opined were "not inconsistent" with sexual abuse. Counsel further stated that O'Riordan would have discussed his opinion of the interview techniques used by DCFS investigators and their impact on L.R.'s allegations. Finally, counsel stated that O'Riordan would have countered the State's suggestion that defendant molested Amber Petitt by stating that his analysis and testing of Amber revealed no indications that she had been sexually abused. Although the court should have allowed O'Riordan to testify as an offer of proof, defense counsel's statements were of sufficient specificity to preserve the issue for review.

On appeal, defendant contends that the court abused its discretion in failing to allow O'Riordan to give opinions on child sexual abuse syndrome and reveal the findings of his analysis of Amber Petitt. An expert is a person who, because of special education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation. (134 Ill. 2d R. 220(a)(1).) Expert testimony in the form of an opinion on an ultimate issue in a case is admissible if it will aid the jury in understanding the facts. (*People v. Lambrecht* (1992), 231 Ill. App. 3d 426, 438; *Fitzpatrick v. A C F Properties Group, Inc.* (1992), 231 Ill. App. 3d 690, 704.) In a prosecution for a sexual act perpetrated on a victim, including child sexual abuse, expert testimony relating to any recognized and accepted form of post-traumatic stress syndrome is admissible. (Ill. Rev. Stat. 1989, ch. 38, par. 115—7.2.) The person tendered to give expert testimony must

first be qualified by the court. (Ill. Rev. Stat. 1989, ch. 38, par. 115—7.2.) The adequacy of an expert witness' qualifications is a matter within the sound discretion of the trial court which will not be disturbed on review absent an abuse of discretion. *Fitzpatrick*, 231 Ill. App. 3d at 704.

In this case, Shirley Robinson, a social worker, was qualified as an expert witness for the State and was allowed to render the common symptoms of post-traumatic child sexual abuse syndrome and give an opinion of whether a child in a hypothetical situation substantially similar to the instant case was sexually abused. Although the court qualified O'Riordan as an expert in the field of psychology, it refused to allow him to render opinions or other information on post-traumatic child sexual abuse syndrome and from revealing the findings of his analysis of Amber Petitt. O'Riordan has a master's degree and a Ph.D. in psychology and has been a clinical psychologist since 1980. He works primarily with children and adolescents in the area of psychological interviewing, testing, and evaluation. O'Riordan held the following positions in his career: staff psychologist at the Cook County Juvenile Detention Center; staff psychologist in the child development unit at Mercy Center for the Health Care Sciences; staff psychologist for the Du Page County jail; and part-time private practice with a staff psychologist. O'Riordan's internship was with Hines Veterans Administration Hospital and the Institute for Juvenile Research. He has taught psychology at a junior college, was a teaching assistant while in school, and has taught psychological ethics for the Illinois Professional College of Psychologists. Five to ten percent of his present caseload involves sexual abuse. O'Riordan further testified that there is no doctorate degree specializing in sexual abuse.

■ Although O'Riordan has not limited his practice to the area of sexual abuse, an adequate foundation was laid for O'Riordan to testify in the area of post-traumatic child sexual abuse syndrome. The indicia of expertise is not measured by a given level of academic qualifications, but whether the expert has knowledge and experience beyond the average citizen which would assist the jury in evaluating the evidence. (*People v. Douglas* (1989), 183 Ill. App. 3d 241, 254.) It does not matter whether the proposed expert acquired specialized knowledge through education, training, experience, or a combination of each. (*People v. Pollard* (1992), 225 Ill. App. 3d 970, 976.) Section 115—7.2 formerly allowed only behavioral psychologists, psychiatrists, or physicians to be qualified as experts to testify in the area of post-traumatic stress syndrome following sexual abuse. (Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2.) The amendment to the statute providing

that the testimony of "an expert, qualified by the court," expanded, rather than narrowed, the field of persons qualified to testify in this area. (Ill. Rev. Stat. 1989, ch. 38, par. 115—7.2; *Pollard*, 225 Ill. App. 3d at 976-78; *People v. Wasson* (1991), 211 Ill. App. 3d 264, 271; *People v. Kelly* (1989), 185 Ill. App. 3d 43, 51; *Douglas*, 183 Ill. App. 3d at 254.) O'Riordan's academic qualifications, studies, and experience in evaluating children are more than sufficient to qualify him as an expert under section 115—7.2 of the Code of Criminal Procedure of 1963 and allow the scope of his testimony to encompass opinions on post-traumatic child sexual abuse syndrome. Therefore, the court abused its discretion in refusing to allow O'Riordan to testify in this area.

The trial court also foreclosed O'Riordan from revealing the findings of his analysis of Amber Petitt by ruling that the evidence was not relevant. Evidence is considered "relevant" if it has any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence. (*Illgen*, 145 Ill. 2d at 366.) Evidence of other offenses is not admissible for the purpose of establishing the defendant's disposition or propensity to commit crime. It is admissible, however, where relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*Illgen*, 145 Ill. 2d at 364-65.) Although Amber was not a party and denied any sexual abuse by defendant, the issue of whether Amber was sexually abused by defendant was put into dispute by the State. The court allowed the State to introduce evidence implying that Amber was sexually abused by defendant via testimony of four section 115—10 witnesses who stated that L.R. told Amber of the incident and that Amber advised L.R. not to worry because defendant had done the same to her on a prior occasion. We previously determined that the manner in which the State elicited this evidence was hearsay not admissible under section 115—10. Since the evidence was admitted, the issue of whether Amber was sexually abused was presumptively relevant. Therefore, the trial court abused its discretion in failing to allow O'Riordan to give an opinion as to whether Amber was sexually abused by defendant as her treating physician.

Lastly, defendant claims that he received ineffective assistance of trial counsel in that counsel failed to (1) contest the reliability of evidence introduced under section 115—10; (2) challenge the introduction of evidence implying defendant had improper contacts with two foster children; (3) object when section 115—10 witnesses were allowed to testify to hearsay statements allegedly made by Amber Petitt informing L.R. that defendant sexually abused her on a prior occasion; (4)

pursue his request for a bill of particulars stating the exact date of the alleged offense; (5) qualify O'Riordan as an expert to testify in the area of post-traumatic child sexual abuse syndrome pursuant to section 115—7.2, and to inquire what O'Riordan's qualification as an expert in the area of psychology allowed him to offer; and (6) counsel introduced evidence prejudicial to the defense concerning the result of a DCFS investigation.

There is a strong presumption that counsel's performance at trial fell within the range of acceptable behavior. (*People v. Wright* (1992), 149 Ill. 2d 36, 46.) To prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's performance was so seriously deficient that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance was so prejudicial that defendant was denied a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 525.) To show actual prejudice, defendant must demonstrate that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Titone* (1992), 151 Ill. 2d 19, 36.

■ We have already determined that defendant was unduly prejudiced by the admission of hearsay indicating defendant sexually abused his daughter Amber, by the testimony of defendant's foster daughters implying defendant had a propensity for improperly touching young girls, and by failing to allow O'Riordan to give expert opinions on post-traumatic child sexual abuse syndrome and to reveal the findings of his analysis of Amber Petitt. We have not addressed the necessity of a bill of particulars or the admissibility of an adverse ruling by DCFS. Although these errors may have resulted in ineffective assistance of counsel, in light of our reversal on other grounds, it is unnecessary to address defendant's contentions as to these issues.

At trial, defendant presented various witness to give an opinion on his reputation in the community for truth and veracity and for morality and chastity. When Gaylord Sheffey, a DCFS employee who placed foster children in the Petitt home, testified that defendant's reputation was "outstanding," the court sustained the State's objection. Sheffey was only allowed to characterize defendant's reputation as "good." When Deborah Pierson, who knew defendant through scouting activities, stated that defendant's reputation was "excellent," her comment was stricken. Similarly, other character witnesses

for the defense were allowed to give only a "good" or "bad" response.

In criminal cases, the State may not introduce evidence of a pertinent character trait of defendant as part of its case in chief. (*People v. Barrow* (1989), 133 Ill. 2d 226, 262.) This type of evidence is prejudicial because it may cause the jury to believe the defendant is a bad person, likely to be guilty of the crime charged. (*People v. Starks* (1983), 116 Ill. App. 3d 384, 391, *appeal after remand* (1988), 169 Ill. App. 3d 588.) However, a defendant may offer proof of his good character to establish that his character traits are inconsistent with the commission of the crime charged. *People v. Lewis* (1962), 25 Ill. 2d 442, 445; *People v. Flax* (1986), 147 Ill. App. 3d 943.

▆ In this case, the witnesses were asked to give an opinion on defendant's general reputation for truth and veracity and for morality and chastity. Inquiry into defendant's character must relate to the nature of the crime involved. Evidence of general reputation for a character trait not involved in the crime charged is not admissible. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 31.) A defendant's reputation for morality and chastity is relevant in a prosecution for criminal sexual abuse. (See *Lewis*, 25 Ill. 2d at 444.) However, defendant's reputation for truth and veracity is not at issue in a prosecution for criminal sexual abuse, and defense counsel was not entitled to bolster defendant's credibility by eliciting opinions on defendant's reputation for this trait. See *Crosser*, 117 Ill. App. 3d at 30.

Proof of the relevant character trait involved is made by showing the defendant's general reputation in the community based on the witnesses' affiliation with the defendant's neighbors and friends. (*Lewis*, 25 Ill. 2d at 445; *People v. House* (1990), 197 Ill. App. 3d 1017.) Evidence of specific acts or personal opinion is inadmissible. (*People v. Barnes* (1989), 182 Ill. App. 3d 75, 79.) In this case, the evidence was closely balanced. Defendant's conviction was largely based on the jury's assessment of the credibility of defendant and the victim. Although defendant has not raised the issue of any error occurring from the court's ruling, the issue of defendant's reputation for morality and chastity will be raised on remand. The witnesses were entitled to state that defendant's reputation in the community for morality and chastity was "excellent" or "outstanding," or whatever adjective they chose to describe defendant. The court's practice of curtailing the witnesses' testimony concerning the defendant's character to "good" or "bad" responses constituted plain error and should not occur on remand.

For the foregoing reasons, we reverse the judgment of the circuit court of Kane County and remand this cause to the trial court for further proceedings in conformance with the opinion of this court.

Reversed and remanded.

INGLIS, P.J., and BOWMAN, J., concur.