THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLARENCE E. EMBRY, Defendant-Appellant.

Fourth District    No. 4—92—0737

Argued March 24, 1993.—Opinion filed August 26, 1993.

David W. Butler (argued), of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In July 1992, a jury convicted defendant, Clarence E. Embry, of two counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1991, ch. 38, pars. 12—14, 12—16.) The court sentenced defendant to two consecutive eight-year terms of imprisonment for the aggravated criminal sexual assault convictions and declined to enter judgments of conviction on the two aggravated criminal sexual abuse charges. Defendant appeals, alleging as error that (1) the court admitted hearsay testimony absent compliance with section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 115—10), as well as hearsay testimony which implied an ongoing series of acts; (2) the prosecutor said in his opening statement that the child witnesses would testify about sexual abuse, but neither witness related any of the elements of the offenses charged; (3) the court admitted testimony that the defendant was in the hospital for cannabis use at the time of arrest; (4) the State did not prove him guilty beyond a reasonable doubt; and (5) the court concluded that consecutive sentences were mandatory.

We affirm.

## I. BACKGROUND

On the evening of January 2, 1992, defendant baby-sat his next-door neighbor's three daughters—A.P. (age four), H.P. (age six), and E.W. (age nine)—at his trailer. During the evening, E.W. returned home, but her two younger sisters remained overnight at the defend-

ant's trailer. The mother testified at defendant's trial that when the girls returned home the following morning, she smelled semen on A.P. Further, H.P. told her that defendant had pulled his pants down, the girls (A.P. and H.P.) had pulled their pants down, and they all danced around. The mother took all three girls to the Bloomington police department for an interview, but only E.W. and H.P. discussed acts involving A.P. and H.P. None of the girls alleged that defendant had any sexual contact with E.W. The State subsequently charged defendant with two counts of aggravated sexual assault, one count alleging penile-vaginal penetration with A.P. and one count alleging penile-vaginal penetration with H.P., and two counts of aggravated criminal sexual abuse, one count alleging conduct involving defendant's penis and A.P.'s hand and one count alleging conduct involving defendant's penis and H.P.'s leg.

In April 1992, the State filed a notice of intent under section 115—10 of the Code that the State intended to offer statements made by H.P. to her mother and Officers Fazio and Harris of the Bloomington police at defendant's trial. In June 1992, the trial court conducted a section 115—10 hearing at which Fazio testified that H.P. told him that defendant pulled his pants down, she and A.P. pulled their pants down, and A.P. then sat on the defendant's head. H.P. also told him that they were all lying on the floor together, and A.P. had to squeeze the defendant's "peter," after which the defendant "went to the bathroom." Fazio asked H.P. what color came out when defendant went to the bathroom, and H.P. said that sometimes it was white when A.P. sat on the defendant and sometimes was yellow when he went to the bathroom.

H.P. then demonstrated with two stuffed mice how she and A.P. straddled defendant when he was lying on the floor on his back and told Fazio that neither she nor A.P. were wearing pants when they did so. H.P. also told Fazio that A.P. had to lick the defendant's "peter." At that point, defendant objected to admission of anything H.P. told Fazio regarding acts committed on anyone other than herself. The court overruled the objection, finding that section 115—10 of the Code did not require the out-of-court statements to be limited to acts performed upon the child declarant.

Fazio stated that he gave H.P. some anatomical drawings for the purpose of body-part identification. H.P. identified the penis as defendant's "peter," and explained that he used it to touch her "butt" and her "pee-pee," which she had labeled the vaginal area. H.P. told Fazio that defendant rubbed his penis against her butt and her inner thigh, and then "went to the bathroom" on her. Fazio

stated that H.P. also said that defendant did the same things with A.P. Using the anatomical drawings, H.P. also indicated that defendant's penis contacted A.P.'s mouth when A.P. had to lick defendant's "peter."

Harris testified that he assisted Fazio in interviewing H.P. and essentially corroborated Fazio's testimony. At the section 115—10 hearing, no witness testified to any statements made by E.W. or A.P.

Prior to defendant's trial, the court conducted a hearing to determine the competency of each of the three sisters to testify. After conducting an *in camera* interview with each child, the court determined that H.P. and E.W. were competent to testify, but that A.P. (who had turned five) was not.

When the trial began, the prosecutor told the jury in opening statements that the child witnesses would testify about sexual abuse by defendant. Prior to the State's calling its first witness, defendant objected to any testimony regarding out-of-court statements by E.W. because she was not alleged to be a victim of any offense. The State acknowledged that the previous section 115—10 hearing did not include statements made by E.W. Outside the presence of the jury, the court then conducted a section 115—10 hearing on statements E.W. made to Fazio. She told Fazio that the defendant locked the door of his trailer, pulled his pants down, and talked "gross." She said her sisters pulled their pants down and then "bad things happened," but she would not look. E.W. then left defendant's trailer and went next door to her own home. Based on this testimony, the court found that E.W.'s out-of-court statements possessed the requisite reliability.

When the jury returned, Fazio testified essentially as he had at the section 115—10 hearings regarding the out-of-court statements made by H.P. and E.W. Fazio also testified that at the time of defendant's arrest, defendant told Fazio that on the night he was baby-sitting the three girls, he took them out for pizza and then they returned to the trailer. Around 9 p.m., E.W. went home. Defendant told Fazio that he went to the bedroom to change for bed, but the girls tried to watch him undress. He threatened to send them home and told them to go back in the living room.

Defendant further told Fazio that when he lay on the floor with the girls, they started to tickle him. He claimed that A.P. pulled down his pants and grabbed his "wiener." He told A.P. not to do that and again threatened to send them home. Fazio asked defendant whether H.P. had also tried to grab his penis or if defendant had placed his penis in A.P.'s mouth. Defendant said that H.P. had tried to grab his penis, but he had moved away. A.P. then asked him if she could lick

his penis and tried to put his penis in her mouth, but he would not let her. Defendant told Fazio that H.P. encouraged A.P. in this conduct. He explained that he did not allow the girls to leave later because the lights were off next door, and it was rainy and cold outside. When Fazio asked the defendant if he was giving the statement of his own free will, the defendant said "[y]es, as long as I can get help."

During cross-examination, defense counsel asked Fazio where defendant was when defendant made the statement, "as long as [he could] get help." Over objection by the State, Fazio testified that defendant was "at the [Veterans Administration (VA)] hospital in Danville for cannabis usage." Defendant objected, and the court admonished the jury to disregard the reason why defendant was at the VA hospital.

The State then called E.W. to the stand. E.W. testified that when she was at the defendant's trailer with her sisters, she saw defendant pull his pants down and then turned her head away. Under cross-examination, E.W. indicated that she also saw H.P. and A.P. with their pants down.

H.P. next took the stand and answered some preliminary questions as to her name, age, and where she went to school. In response to leading questions, she indicated that she had been at the defendant's trailer with her sisters on the night in question, and that E.W. then left. After she refused to answer any further questions, the court excused her from the witness stand.

The State then called the children's mother, who testified that on January 2, she sent her daughters to defendant's trailer so he could baby-sit them. She stated that when H.P. and A.P. returned the following morning, she noticed a funny odor on them, which she described as smelling like semen. She testified that H.P. told her that defendant pulled his pants down, A.P. pulled her pants down, and they danced. She further testified that E.W. had told her that was the reason she came home and did not want to spend the night at defendant's trailer.

After the State rested, defendant moved for a mistrial because H.P. had not testified and the State had offered no corroborative evidence at the section 115–10 hearing. The court responded as follows:

"State's case is that the defendant himself has made what only can be considered perhaps inculpatory admissions, and I think that is the type of corroborative evidence that can be considered. Corroboration also exists in the form that it's not denied the kids were over there that night. It's not denied they

stayed twenty-four hours. It's not denied they slept over there. [E.W.] came back home.

\*\*\*

\*\*\* [T]he only element that seems to appear to be left is what a jury concludes really happened. Did what happen consist of what defendant says happened in his voluntary statement or together with any explanation he may give? Is that sufficient for an adult even to acknowledge that that much happened and go into what amounts to kind of a seductive small child defense \*\*\*? \*\*\* So to me the corroboration here is clear as to whether the acts took place or not."

Defendant testified that on the night of January 2, all the children asked if they could stay with him. He took them out for pizza, and they returned to his trailer, where the children colored and played. At about 8:30 p.m., two of the girls began changing into their pajamas, and E.W. went home. Defendant went into the bathroom and changed into a pair of sweatpants. While he was in the bathroom, the children came down the hallway and tried to peek inside, but he chased them back to the living room.

Defendant testified that he had the girls sleep on the floor on a used blanket he had purchased and, while there, the girls began roughhousing and wrestling. Later, at the girls' request, the defendant lay with them on the floor because they were scared, but they then started tickling and wrestling with him. According to defendant, H.P. told A.P. to pull down defendant's sweatpants, but defendant told them not to do that and grabbed his pants before they could pull them down. Defendant asked H.P. where she had learned this, and she told him she saw her mom and her mom's boyfriend in the bedroom.

Defendant further testified that he made no attempt to stop E.W. when she wanted to go home because it was early in the evening and lights were still on at her trailer. Later, when the other girls wanted to go home, he would not allow them to do so because the trailer was dark and it was raining. Defendant stated that the girls wore underwear under their pajamas, which they pulled down but did not remove. He said that the wrestling on the floor with the girls (while they pulled down their pajamas and tried to pull down his sweatpants) lasted approximately 10 minutes.

Defendant stated that the next morning, he did not notice anything unusual about the way the girls acted. However, because A.P. had wet her underwear during the night, he dried her underwear on the register. When he took the children home, he visited with the girls and their mother for about 1½ hours and returned later that

same day for another one to two hours. While he was there, nothing was said to him about the events of the prior evening, and he did not notice anything unusual in anyone's behavior. He denied having any sexual contact with the children. He also testified that at the time of his arrest, he was in a VA hospital in Danville for reasons unrelated to the events of January 2.

During cross-examination, defendant denied that A.P. had grabbed his "wiener," stating that she had tried but had not been successful. However, he did acknowledge he told Fazio that A.P. had pulled down his pants and grabbed his "wiener." Defendant testified that both H.P. and A.P. had attempted to grab his "wiener," but they never got his sweatpants down. Defendant stated that although he threatened to send the girls home for their actions, he did not do so because they did not want to go. He admitted that he had told Fazio that A.P. and H.P. had wanted to go home, but he would not let them go because it was late.

Defendant also admitted on cross-examination that he told Fazio that A.P. tried to put his penis in her mouth, but he would not let her, and that when A.P. asked if she could lick his penis, he told them that "I wasn't up for it because it's not nice. [H.P.] was telling [A.P.] to do it." Defendant also acknowledged that he told Fazio that A.P. and H.P. had tried to sit on his penis, but he moved away from them and told them that it was not nice, to stop it, and to get their clothes on. Defendant denied that A.P. and H.P. were naked when they tried to grab his penis. Defendant admitted that when Fazio asked him whether he had had an orgasm while this was happening, he had responded "no, it was wrong and nasty, and I wasn't into it." Last, defendant suggested that the children's mother might say they smelled like semen when they came home the following morning because A.P. had wet the used blanket she slept on.

As stated earlier, the jury returned guilty verdicts on all four charges, but the court entered judgments of conviction only on the two counts of aggravated criminal sexual assault. At sentencing, the court found the two offenses of aggravated criminal sexual assault involving A.P. and H.P. were part of a single course of conduct and, under section 5—8—4(a) of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a)), consecutive sentences were mandatory. The court sentenced the defendant to two consecutive, eight-year terms of imprisonment, noting that its sentencing decision might have been different if the statute did not mandate consecutive sentences.

## II. ANALYSIS

### A. *Section 115—10 of the Code*

#### 1. Corroborating Evidence of Alleged Acts When the Child Victim Does Not Testify

Defendant first contends that section 115—10 of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 115—10) required the State to present corroborative evidence of the acts which are the subject of the section 115—10 statements at the time the trial court conducts the hearing on the reliability of those statements. We disagree.

Section 115—10(b) of the Code provides that certain evidence shall be admitted as an exception to the hearsay rule under the following circumstances:

"(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b).

At the initial section 115—10 hearing, the court found that the time, content, and circumstances of the statements made by H.P. to her mother, Fazio, and Harris provided sufficient safeguards of reliability. The court also indicated that because the State had presented no corroborative evidence at the hearing, the statements would not be admitted if H.P. did not testify or was unable to testify.

Defendant does not contest the finding that the out-of-court statements were reliable. Instead, he argues that the hearsay statements were inadmissible because H.P. did not testify at his trial and the State did not submit any corroborative evidence at the section 115—10 hearing.

In a typical case involving section 115—10 of the Code, the State will present evidence to try to convince the court that "the time, content, and circumstances of the statement [at issue] provide sufficient safeguards of reliability." (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b)(1).) If the State succeeds in doing so, as here, then the section 115—10 hearsay statement of the child is admissible if *either* of the following occurs: (A) the child testifies at the "proceeding" (namely, the trial); or (B) the child is unavailable to testify as a witness at trial

(for whatever reason) "and there is corroborative evidence of the act which is the subject of the statement." (Ill. Rev. Stat. 1991, ch. 38, pars. 115—10(b)(2)(A), (b)(2)(B).) Although "corroborative evidence of the act which is the subject of the statement" might overlap with evidence demonstrating that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability," these are still two separate concepts, and as in the present case, the State may choose (and need) to present different evidence to address each. Thus, the question arises whether (and to what extent) the trial judge should address either of these two alternatives at the conclusion of the *initial* section 115—10 hearing. We conclude that the trial court should provide the parties with the benefit of the court's analysis of the evidence presented so that the parties can govern themselves accordingly, both at trial and in preparation for trial. We explain this conclusion further as follows.

Assume a hypothetical case in which the trial court, at the conclusion of the section 115—10 hearing, concludes that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b)(1).) Assume further that the trial court concludes that the evidence presented at that point in the proceedings is *not* sufficiently corroborative of the act which is the subject of the statement. The trial court should state these findings to the parties so that the prosecutor knows that in order to convince the court to admit the child's hearsay statement under section 115—10 of the Code, the prosecutor must either (1) call the child to testify at the trial, *or* (2) be prepared to present further "corroborative evidence of the act which is the subject of the statement" at a renewed section 115—10 hearing if, as occurred in the present case, the child in fact cannot testify.

The situation in this hypothetical is different than one in which the trial court, after hearing evidence that addresses section 115—10(b)(1) of the Code, concludes not only that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability," *but also* that "there is corroborative evidence of the act which is the subject of the statement." (Ill. Rev. Stat. 1991, ch. 38, pars. 115—10(b)(1), (b)(2)(B).) The trial court's so finding might prove important for the prosecutor's evaluation of how to proceed, especially if the child victim is young, hesitant to testify, or the child's parents do not want the child to testify.

Where a prosecutor has a good-faith belief that the child will testify and intends to call the child to testify, then we should not burden the trial court with a requirement that the State *must* at that point

present "corroborative evidence of the act which is the subject of the statement." After all, such evidence will never be required if, as an alternative to the State's presenting "corroborative evidence" under section 115—10(b)(2)(B) of the Code, the child testifies at trial, thereby satisfying the *alternative* requirement for the admissibility of the hearsay statement under section 115—10(b)(2)(A) of the Code. Defendant argues in the present case that the State must present corroborative evidence of the acts which are the subject of the statement at the initial section 115—10 hearing *even though* the prosecutor in good faith represents that the child will later testify at trial. For the reasons stated, we reject that argument and choose to leave this matter to the sound discretion of the trial judge.

■ Despite the State's good-faith belief that the child victim would testify at trial, the State cannot be certain that the child can or will do so. However, this lack of certainty does not *require* the presentation at the section 115—10 hearing of possible corroborative evidence under section 115—10(b)(2)(B) of the Code *just in case* the child victim does not testify at trial. If that event occurs, as here, then the trial court can conduct a supplemental section 115—10 hearing to give the State the opportunity to present whatever corroborative evidence it possesses to meet the requirement of section 115—10(b)(2)(B) of the Code.

■ Additionally, we point out that the trial court's remarks at the conclusion of the initial section 115—10 hearing constitute a *preliminary* assessment of the evidence, and, as with rulings on motions *in limine*, this preliminary assessment may be reconsidered with or without the presentation of further evidence. Thus, once it became clear in the present case that H.P. could not testify, the trial court revisited the matter of "corroborative evidence" under section 115—10(b)(2)(B) of the Code and concluded that such evidence was present so as to render H.P.'s hearsay statements to Fazio admissible under that section.

Further, although not necessary for our decision, we note that defendant through discovery clearly knew this corroborative evidence existed. This evidence consisted of his own inculpatory statements to Fazio at the time of arrest, the statements of the victims' mother regarding the odor of semen on A.P., and E.W.'s observing her sisters and defendant with their pants down.

■ Citing *People v. Ward* (1991), 207 Ill. App. 3d 365, 369, 565 N.E.2d 740, 742-43, defendant also argues that the statements he made to Fazio do not constitute corroborative evidence because section 115—10(b)(2)(B) of the Code views corroborative evidence as con-

sisting of only physical evidence or eyewitness testimony. We disagree. We find nothing in *Ward* or in the language of section 115—10(b)(2)(B) of the Code that indicates a limitation on the type of evidence which can fulfill the "corroborative evidence" requirement of the statute. The *Ward* court expressly referred to "circumstantial" or "other forms of evidence" in addition to eyewitness testimony as examples of corroborative evidence. (*Ward*, 207 Ill. App. 3d at 369, 565 N.E.2d at 743.) The statements made by defendant at the time of his arrest (though characterizing the victims as aggressors) clearly corroborate the statements of H.P. at issue in the section 115—10 hearing.

As a caveat, we note that Fazio testified at trial about H.P.'s out-of-court statements before the State called H.P. to the stand. In view of the foreseeability that a child testifying about being sexually assaulted may sometimes freeze when confronted with the unfamiliar and often intimidating atmosphere of the courtroom, the State risks a mistrial by presenting the child's hearsay statements through section 115—10 of the Code before the child himself or herself testifies. If the child proves unable to testify and if the State *cannot* then present corroborative evidence within the meaning of section 115—10(b)(2)(B) of the Code, then the child's hearsay evidence would not be properly before the jury because of noncompliance with the statute.

### 2. Statements Regarding Acts Not Perpetrated on the Declarant

Defendant next argues that the out-of-court statements made by H.P. regarding defendant's acts involving A.P. do not fall within the scope of the hearsay exception of section 115—10 of the Code. Defendant claims that exception only pertains to acts committed upon the child declarant and does not extend to hearsay statements concerning another alleged victim, in this case A.P.

The trial court determined that the language of section 115—10(a)(2) of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(a)(2) (a sexual act perpetrated upon *a* child)) did not limit the admission of a child victim's out-of-court statements to acts performed on himself or herself. Section 115—10(a) of the Code provides as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child *describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 115—10(a).

■■ The introductory language in section 115—10(a) of the Code refers to a prosecution for *a* sexual act perpetrated upon *a* child, namely, the child victim. Section 115—10(a)(1) of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(a)(1)) refers to testimony by *such child* (the victim) regarding out-of-court statements. Section 115—10(a)(2) of the Code again refers to such child's out-of-court statement (the victim) pertaining to the subject of "a prosecution for *a* sexual act perpetrated upon *a* child." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(a)(2).) Because the final clause of section 115—10(a)(2) parallels the language in section 115—10(a) of the Code, which expressly refers to acts perpetrated against the victim, we construe section 115—10(a)(2) of the Code as limiting the admission of out-of-court statements to those pertaining to an act, matter, or detail of a sexual offense committed upon the declarant child victim. We therefore disagree with the trial court's conclusion that the statute admits statements describing offenses against a victim other than the victim declarant.

However, in this case, H.P.'s out-of-court statements, while including references to acts defendant had perpetrated on A.P., were properly admissible as components of the contemporaneous and ongoing series of events constituting *a matter or detail pertaining to the offense perpetrated against herself.* (See *People v. Rushing* (1989), 192 Ill. App. 3d 444, 452, 548 N.E.2d 788, 793 (defendant's threat made to child victim to kill her family was a detail pertaining to the offense since it was made contemporaneous with the sexual acts).) The fact that the statements had independent relevance as proof of an offense concurrently perpetrated against A.P. does not render the statement inadmissible as a matter or detail pertinent to offenses against H.P. Accordingly, we find that the trial court properly admitted the hearsay statements of H.P.

■■ Defendant also argues that the trial court improperly admitted the out-of-court statements of E.W. We agree. Hearsay statements by E.W. do not fall within the purview of section 115—10 of

the Code because she was not a victim of a sexual offense perpetrated against her by defendant. However, the erroneous admission of E.W.'s statements does not require reversal. We view E.W.'s statements, as testified to by Fazio, as uncertain and minimally, if at all, prejudicial. E.W.'s statements essentially were that defendant "locks the door, talks gross," and then "bad things" happened, causing her to look away. Additionally, E.W.'s testimony and cross-examination at defendant's trial overshadow any impact of Fazio's testimony regarding her vague out-of-court statements. In further support of our conclusion that the erroneous admission of Fazio's testimony about what E.W. told him does not require reversal, we note that the State presented a strong case against defendant, and we conclude that the testimony in question made no difference to the outcome of this case.

■ Defendant further argues that Fazio disregarded an order *in limine* to rephrase E.W.'s statements to him so as to avoid use of the present verb tense, which implied other sexual conduct for which defendant was not charged. At trial, Fazio testified that E.W. told him that defendant "does things that he shouldn't do," "[t]alks gross," and "locks the doors." Defendant raised no objection or motion to strike at the time Fazio testified as indicated, thereby depriving the trial court of any opportunity to address this alleged impropriety. Because defendant failed to object at trial to this testimony, he has waived any objection on appeal. See *People v. Peter* (1973), 55 Ill. 2d 443, 460, 303 N.E.2d 398, 408.

### B. *The Prosecutor's Opening Statement*

Defendant next asserts that the prosecutor's opening statement prejudiced him because the jury was told that the victims would testify to sexual acts, yet neither H.P. nor E.W. testified about any of the elements of the offenses charged.

During opening statements, the prosecutor stated the following:

"The evidence that I'm going to present today are [*sic*] with six witnesses, two of them are going to be three [*sic*] girls, one of which is what we call an occurrence witness of the allegations of sexual abuse to the two girls. The three girls that are going to testify or I should say just two girls are going to testify is [*sic*] [E.W.] and [H.P.] They will testify about the abuse that has occurred regarding what they've seen and what has been done to them."

An opening statement should be an outline of facts which the prosecution in good faith expects to prove; the inclusion of matters not thereafter presented at trial constitutes reversible error only

when substantial prejudice results to defendant. *People v. Coleman* (1989), 187 Ill. App. 3d 541, 550, 543 N.E.2d 555, 561.

■ Defendant does not allege that the prosecutor made the opening statement in bad faith. Further, defendant has not shown that the facts referred to in the prosecutor's opening statement were not presented at trial: Fazio testified to H.P.'s out-of-court statements describing the sexual acts perpetrated by defendant, and E.W., the occurrence witness, testified about what she had seen occurring between her sisters and the defendant. Instead, defendant argues that the children's inability to testify to the elements of the offense, when combined with Fazio's testimony that young children are often reluctant to discuss sexual offenses and the prosecutor's reference to the girls' reluctance to testify in court, allowed the jury to infer that the offenses must have occurred merely from the fact that the children would not testify. We find this argument unpersuasive and unsupported by precedent. It merits no further discussion.

## C. *Testimony of Other Crimes*

■ Defendant argues that he was denied a fair trial by testimony interjecting evidence of other crimes. In an apparent attempt to explain defendant's statement to Fazio at the time of arrest that he was freely willing to talk "as long as I can get help," defense counsel on cross-examination asked Fazio where defendant was at the time of his arrest. The State objected to this question, but the court overruled it. Fazio then responded, "[h]e was at the VA hospital in Danville for cannabis usage."

The response to which defendant now objects may be due to his failure to limit explicitly the scope of his question. More significantly, however, the court admonished the jury at defendant's request that the purpose of defendant's presence in the VA hospital was irrelevant, and that the jury was to disregard that portion of Fazio's answer. The court's action cured any prejudice which might have otherwise occurred. See *People v. Wilson* (1972), 51 Ill. 2d 302, 308-09, 281 N.E.2d 626, 629.

## D. *Sufficiency of the Evidence*

Defendant next argues that the State failed to prove him guilty beyond a reasonable doubt because of the absence of corroboration of H.P.'s hearsay statements and defendant's denial of the offenses. We disagree.

The trial court, as the judge of the credibility of the witnesses and weight of the evidence presented at the section 115—10 hearing (see

*Ward*, 207 Ill. App. 3d at 370, 565 N.E.2d at 743), determines whether corroboration exists which allows admission of hearsay statements made by a child under section 115—10 of the Code. A reviewing court cannot substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. Further, we will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. See *People v. Campbell* (1992), 146 Ill. 2d 363, 374-75, 586 N.E.2d 1261, 1265-66.

■ Defendant moved for a directed verdict at the close of the State's case, arguing a lack of evidence corroborating H.P.'s out-of-court statements. The court found defendant himself supplied corroboration by his own voluntary statement to Fazio. At sentencing, the trial court noted:

> "This is a trial where there was no question, none, that there was sexual activity involving the children and the Defendant. The Defendant was hung on the basis of statements and admissions he had made to the police ***."

Moreover, in addition to defendant's own inculpatory statements, the testimony by the children's mother that she smelled semen on A.P. when A.P. returned from the defendant's trailer after spending the night, and E.W.'s testimony that she saw defendant pull his pants down and her sisters pull their pants down while at the defendant's trailer, provides more than sufficient corroboration of H.P.'s out-of-court statements.

### E. *Consecutive Sentences*

Defendant last argues that the two counts of aggravated criminal sexual assault involving H.P. and A.P. were not a single course of conduct (contrary to the finding of the trial court) but were instead distinct and separate offenses for which consecutive sentences under section 5—8—4(a) of the Unified Code are not mandatory. (See *People v. Bole* (1993), 155 Ill. 2d 188, 197-99, 613 N.E.2d 740, 744-45.) Defendant argues that because each of the two charges of aggravated criminal sexual assault involves different acts with different victims, they are separate events, not part of "a single course of conduct." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a).) Defendant points to the trial court's observation that the sentence imposed might have been different had consecutive sentencing not been mandatory under section 5—8—4(a) of the Unified Code.

Section 5—8—4(a) of the Unified Code provides, in pertinent part, the following:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was *** a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a).

In *Bole*, the supreme court determined that the defendant's three convictions for criminal sexual assault arose from offenses committed on three different dates, several days apart, and thus were separate events not committed in a single course of conduct. (*Bole*, 155 Ill. 2d at 194, 613 N.E.2d at 743.) However, the supreme court also determined that given the statutory definition of "conduct" as "an act or a series of acts, and the accompanying mental state" (Ill. Rev. Stat. 1991, ch. 38, par. 2—4), a "single course of conduct" might encompass multiple incidents. *Bole*, 155 Ill. 2d at 193, 613 N.E.2d at 743.

In this case, the evidence indicates that all the sexual contact between defendant and the two victims occurred in a single time span when they were all lying together on the floor of defendant's trailer. According to defendant's trial testimony, the activities on the floor lasted approximately 10 minutes. We conclude that this series of acts involving two children, whether occurring simultaneously or over a short time period, cannot be viewed as other than a single course of conduct during which no substantial change in the nature of the criminal objective occurred. The existence of two victims rather than one does not alter this conclusion.

### III. Conclusion

For the reasons stated, we affirm the judgment and sentences of the circuit court.

Affirmed.

McCULLOUGH and LUND, JJ., concur.