THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AMASA M. PECK, Defendant-Appellant.

Fourth District   Nos. 4—94—1009, 4—94—1010 cons.

Argued August 22, 1996.—Opinion filed December 9, 1996.

COOK, J., specially concurring.

Daniel D. Yuhas and John M. McCarthy (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Scott A. Manuel (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

A jury convicted defendant, Amasa M. Peck, of four counts of aggravated criminal sexual assault, committed upon his two daughters

under 13 years of age (720 ILCS 5/12—14(b) (West 1992)). He was sentenced to concurrent 15-year prison terms on three counts, and eight years on the last count, to run consecutively to the others. Defendant appeals, arguing the trial court erroneously (1) admitted hearsay testimony in violation of section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 1992)); (2) spoke to the jurors after they returned the guilty verdicts and discussed the credibility of certain evidence prior to ruling on the post-trial motion; and (3) admitted an audiotape of an interview with one victim. We reverse and remand for a new trial.

## I. BACKGROUND

The material in this section is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

## II. HEARSAY STATEMENTS ADMITTED PURSUANT TO SECTION 115—10

Defendant argues the trial court erred by admitting out-of-court statements made by J.P. regarding defendant's acts involving H.P. and an out-of-court statement made by H.P. regarding defendant's acts involving J.P. We agree.

■ Section 115—10(a)(2) of the Code provides as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

***

(2) testimony of an out[-]of[-]court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated *upon a child.*" (Emphasis added.) 725 ILCS 5/115—10(a)(2) (West 1992).

In *People v. Embry*, 249 Ill. App. 3d 750, 763, 619 N.E.2d 246, 255 (1993), this court construed section 115—10(a)(2) of the Code as "limiting the admission of out-of-court statements to those pertaining to an act, matter, or detail of a sexual offense committed upon the declarant child victim." However, this court also held that an exception exists where statements of a child about defendant's acts involving another child are "components of the contemporaneous and ongoing series of events constituting *a matter or detail pertaining to the offense perpetrated against* [the declarant] *herself.*" (Emphasis in original.) *Embry*, 249 Ill. App. 3d at 763, 619 N.E.2d at 255.

### A. Burden of Establishing Admissibility of Hearsay Statements Pursuant to Section 115—10

Initially, we address the State's argument that the out-of-court

statements at issue are admissible even though—the State concedes—it is *unclear* whether defendant's acts on the other child occurred contemporaneously with the acts perpetrated against the declarant. The State contends defendant bears the burden to show the statements concerned separate occurrences. We disagree.

■ In *People v. Zwart*, 151 Ill. 2d 37, 43, 600 N.E.2d 1169, 1171 (1992), the supreme court held that the State, as the proponent of statements sought to be admitted pursuant to section 115—10 of the Code, bears the burden of establishing that they were reliable and not the result of adult prompting or manipulation. Similarly, we conclude the State, as the proponent of the statements here, bears the burden of establishing that the statements made by a child regarding defendant's acts against another child involve "components of the contemporaneous and ongoing series of events constituting *a matter or detail pertaining to the offense perpetrated against* [the declarant] *herself*." (Emphasis in original.) See *Embry*, 249 Ill. App. 3d at 763, 619 N.E.2d at 255. Whether the statement qualifies as such depends on the particular circumstances in a given case. Some relevant considerations are the following: (1) the relationship of the declarant to the child upon whom the witnessed sexual act is perpetrated; (2) the proximity of such act—in time and place—to the act allegedly performed upon the declarant; (3) the similarity of the two acts; and (4) the existence of a common perpetrator. These considerations may be significant in explaining the declarant's willingness to submit to similar sexual acts, as well as her reluctance to resist, cry out, or complain to others.

## B. Admissibility of Section 115—10 Hearsay

In this case, the trial court conducted a hearing and determined that statements J.P. and H.P. made to their aunt (Foley), their mother (Annette), Smith (the girls' former school principal), Pochel (foster mother), Devall (DCFS investigator), and Deerwester (deputy sheriff), including the audiotaped statements of the January 25, 1994, interview of J.P. at the sheriff's department, were admissible.

The jury heard, through the audiotape, one statement by J.P. that constituted double hearsay—namely, that H.P. told J.P. that H.P. had seen "white sticky stuff" coming out of defendant's penis. Such double hearsay does not come within the exception set forth in *Embry*. See *Embry*, 249 Ill. App. 3d at 763, 619 N.E.2d at 255; see also *People v. Petitt*, 245 Ill. App. 3d 132, 142, 613 N.E.2d 1358, 1367 (1993).

Further, the trial court admitted three hearsay statements by J.P. that clearly did not involve a matter or detail pertaining to an

act committed contemporaneously against J.P. Devall testified that during his initial interview of H.P. and J.P. in October 1993, J.P. told him she watched from a tree as defendant touched H.P. with his hand. The audiotape contained a substantially similar hearsay statement by J.P. Finally, Smith testified that during Devall's January 25, 1994, interview of H.P. and J.P. at school, J.P. stated that, as she watched from a tree, defendant touched H.P. with his penis.

The trial court also admitted five hearsay statements by J.P. and one hearsay statement by H.P. that were unclear as to whether they constituted a matter or detail pertaining to an act committed contemporaneously against the declarant child. Devall testified that during the interview at school, J.P. stated she had seen defendant touch H.P. with his penis. The audiotape contained four hearsay statements by J.P. that were similarly unclear: (1) J.P. stated she had seen defendant touch H.P. with his hand, but no other part of his body; (2) she had seen "it" happen to H.P. in her grandmother's living room; (3) she saw defendant's "private" touch H.P.; and (4) she saw defendant's "private" go inside H.P.'s mouth "a little bit." Devall also testified that during the interview at school, H.P. told him she had seen defendant touch J.P. "in a bad way" in her maternal grandmother's kitchen.

■ Under the interpretation of section 115—10 as set forth in *Embry* (249 Ill. App. 3d at 763, 619 N.E.2d at 255), we conclude the trial court erred by admitting (1) one double hearsay statement by J.P., (2) three hearsay statements by J.P. that clearly did not involve a detail pertaining to an act committed against J.P., and (3) five hearsay statements by J.P. and one by H.P. that were unclear regarding whether they constituted a matter or detail pertaining to an act committed contemporaneously against the declarant child victim.

The State maintains that any error in admitting the hearsay statements at issue was harmless. We disagree. The trial court erred by admitting 10 hearsay statements by J.P. and H.P. through two trial witnesses and the audiotape. The evidence against defendant was not overwhelming. Both Foley and Peck testified that H.P.'s vagina becomes red and sore when H.P. drinks too much soda. Peck also stated that J.P. never has vaginal redness. Also, the statements by J.P. and H.P. contained inconsistencies. H.P. blamed both defendant and J.P. for her sore vagina; during the two interviews on January 25, 1994, J.P.'s statements about the incident she watched from the tree were inconsistent as were those regarding whether she saw "white sticky stuff" coming from defendant's penis. (At one point, J.P. stated that H.P. told her about the "white sticky stuff.") In addition, the medical testimony indicated that Dr. Patel's findings were

inconsistent with full vaginal penetration and inconclusive as to "slight penetration."

Although we reverse, we conclude that the remaining evidence was sufficient to support a finding of guilt beyond a reasonable doubt. Thus, defendant faces no risk of double jeopardy on retrial. See *People v. Cruz*, 162 Ill. 2d 314, 374, 643 N.E.2d 636, 664 (1994).

## III. ISSUES ON REMAND

We now consider issues likely to arise on remand.

### A. Trial Judge's Post-Verdict Meeting with Jurors

Defendant argues the trial court erred when it spoke to jurors after they returned the guilty verdicts and discussed with them the credibility of certain evidence prior to ruling on defendant's post-trial motion challenging the sufficiency of the evidence. We disagree.

■ The law assumes that the trial court, in a bench proceeding, considers only competent evidence, and "[t]his assumption will be overcome only if the record *affirmatively* demonstrates the contrary, as where it is established that the court's finding *rests* on a private investigation of the evidence, or on other private knowledge about the facts in the case." (Emphasis added.) *People v. Tye*, 141 Ill. 2d 1, 26, 565 N.E.2d 931, 943 (1990). Thus, the record must affirmatively show that the trial court considered and, in fact, rested its determination on the jurors' comments.

In ruling on the post-trial motion, the trial court stated the following:

> "THE COURT: [T]he *** Court believes that the judgments [it] made *** are in accordance with both the letter and the spirit of [s]ection 115—10; and [it] understands the concern of defense counsel *** in terms of the difficulty of trying to cross[-]exam[ine] those statements [made by J.P. and H.P.].
>
> Nevertheless, the defense counsel is not without recourse in that situation. In fact, in talking to some of the jurors afterwards they thought defense counsel did an excellent job with Mr. Devall and Mr. Deerwester's testimony regarding the tape[-]recorded interview in the nature of the leading questions, but *** the jurors[ ] found the testimony of *** Smith[ ] to be extremely compelling; and to a lesser extent, only because it was not very lengthy, the testimony of the foster mother ***."

■ In context, these remarks were directed at defense counsel's concerns about his inability to effectively cross-examine witnesses offering hearsay evidence. We conclude this does not affirmatively show that the court considered or based its determination on the jurors' comments in deciding the post-trial motion.

It is a common and accepted practice for trial courts to meet with jurors after they have reached a verdict—provided, of course, the jurors' term of service has been entirely completed. The purpose is to assure them that they did a good job and answer questions. Although we do not want to discourage this practice, we note that it is not necessary for the court to inquire about the jury's analysis of the case— particularly when post-trial motions are to be filed. The post-verdict meeting offers an opportunity for the trial court—not the jurors—to answer questions.

Even if the trial court had relied upon the jurors' comments, the relief defendant requests—a new trial—would not follow. Instead, the appropriate remedy would be to vacate the denial of the post-trial motion and remand for consideration anew by a different judge.

### B. The Admissibility of an Audiotaped Out-of-Court Statement Made by a Child Victim Pursuant to Section 115—10

Defendant argues section 115—10 of the Code does not allow the admission of an audiotaped out-of-court statement of a child victim because it does not specifically provide for the introduction of such evidence. We disagree. Defendant directs us to the decision of the Second District Appellate Court in *People v. Mitchell*, 225 Ill. App. 3d 708, 717, 588 N.E.2d 1247, 1253 (1992), which so held. However, we are not bound by that court's holding and choose not to follow it.

In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting it. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110, 610 N.E.2d 1250, 1253 (1993). Legislative intent is best determined by the language of the statute. *People v. Ferrell*, 277 Ill. App. 3d 74, 77, 659 N.E.2d 992, 995 (1995). Although this court in *People v. Bridgewater*, 259 Ill. App. 3d 344, 349, 631 N.E.2d 779, 782 (1994), wrote that "[i]n light of the principles surrounding the admission of a statement as an exception to the hearsay rule, section 115—10 of the Code should be narrowly construed," a statute should nonetheless be read as a whole and its language given its plain meaning (*Ferrell*, 277 Ill. App. 3d at 77, 659 N.E.2d at 995). A court also must consider the reason and necessity for the law, as well as its objective. *Collins*, 155 Ill. 2d at 111, 610 N.E.2d at 1253. In addition, a court should give a statute capable of two interpretations the one that is reasonable and that will not produce absurd, unjust, unreasonable, or inconvenient results the legislature could not have intended. *People v. Stanciel*, 153 Ill. 2d 218, 233-34, 606 N.E.2d 1201, 1210 (1992).

Child sexual abuse cases present special problems that make their prosecution more difficult than cases involving adult victims.

The most obvious is that the child victim (usually the sole witness to the offense) may be unable to testify adequately —or at all—regarding what occurred, because of guilt, fear, or intimidation. In response, the legislature enacted the original version of section 115—10 of the Code in 1983 (Pub. Act 82—782, § 1, eff. January 1, 1983 (1982 Ill. Laws 220)), which required the child victim to testify at trial and specifically provided for the admission of "testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." Ill. Rev. Stat. 1983, ch. 38, par. 115—10. Effective January 1, 1988, section 115—10(a)(2) was amended (Pub. Act 85—837, § 1, eff. January 1, 1988 (1987 Ill. Laws 3471)), eliminating the provision that the "*person* to whom the child complained" (emphasis added) (Ill. Rev. Stat. 1985, ch. 38, par. 115—10(a)(2)) may testify, and rewriting it to provide that "*testimony of an out[-]of[-]court statement* made by such child describing any complaint" (emphasis added) (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(a)(2)) is admissible, if the provisions of that section are met, including a determination of sufficient safeguards of reliability.

■ Currently, section 115—10 reads, in relevant part, as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:
***

(2) *testimony of an out[-]of[-]court statement* made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." (Emphasis added.) 725 ILCS 5/115—10 (West 1992).

In light of the necessity for section 115—10, and giving the statutory language its plain and reasonable meaning, we conclude "testimony of an out[-]of[-]court statement made by such child describing any complaint" includes an audiotape of an out-of-court statement made by a child victim, provided that it is otherwise admissible under that section and the party offering it lays a proper foundation. 725 ILCS 5/115—10(a)(2) (West 1992).

In support of our conclusion, we note that Devall testified

*verbatim*—with the assistance of his notes—regarding the questions asked and the answers given during his initial interview with H.P. in October 1993. Allowing the jurors to hear an audiotape of an interview with a child victim (which otherwise meets all statutory requirements) is essentially the same as allowing a witness to testify verbatim regarding the statements made by a child victim during such an interview. Indeed, the audiotape possesses more probative value than a witness' testifying verbatim from notes because the audiotape reveals the tone, pauses, certainties, and nuances of the witness' statements. To interpret the statute as defendant requests produces an unreasonable result—keeping from the jury the most probative evidence available on a critical issue—that our legislature could not have intended.

Defendant also errs by relying on *People v. Bastien*, 129 Ill. 2d 64, 541 N.E.2d 670 (1989). In *Bastien*, the supreme court held unconstitutional a statute authorizing the admissibility of the videotaped statement of the child victim in a sexual abuse case when the victim was available at trial for cross-examination. *Bastien*, 129 Ill. 2d at 79-80, 541 N.E.2d at 677. Unlike this case, the statute in *Bastien* involved videotaping a child victim's "statement or testimony" for use at trial without—as was done here—first determining whether the circumstances surrounding the videotaping contained sufficient safeguards of reliability. *Bastien*, 129 Ill. 2d at 68-69, 541 N.E.2d at 672.

C. The Trial Court's Decision to Admit the Audiotape

■ Defendant argues that even if the audiotape of the interview of J.P. is admissible pursuant to section 115—10 of the Code, it was error to admit it because it lacked any "particularized guarantees of trustworthiness" as required by *Idaho v. Wright*, 497 U.S. 805, 814-15, 111 L. Ed. 2d 638, 651-52, 110 S. Ct. 3139, 3146 (1990), and thus violated the confrontation clause.

In *People v. Coleman*, 205 Ill. App. 3d 567, 584, 563 N.E.2d 1010, 1021 (1990), this court held the following regarding *Wright*'s impact on section 115—10:

> "*Wright* has more particularly indicated what is needed to meet this requirement [of particularized guarantees of trustworthiness]. Accordingly, it is necessary to construe the general language of section 115—10(b)(1) to be in line with the more particular language of *Wright*. Thus, the required finding [under section 115—10(b)(1)] that the statement provides 'sufficient safeguards of reliability' must be understood to be of a comparable nature with a finding that the circumstances of the statement render the declarant 'particularly worthy of belief.' "

*People v. Barger*, 251 Ill. App. 3d 448, 462, 624 N.E.2d 405, 413-14 (1993), also addressed this issue:

"[T]he standards regarding the right to confrontation provide guidance on how to interpret the requirement of section 115—10 *** that the time, content, and circumstances of the hearsay statements provide sufficient safeguards of reliability.

In *Idaho v. Wright* (1990), 497 U.S. 805, 814, 111 L. Ed. 2d 638, 651-52, 110 S. Ct. 3139, 3146, the United States Supreme Court held that incriminating hearsay statements *** must bear adequate 'indicia of reliability.' Such 'indicia of reliability' can come from the statement's fitting into one of the firmly established hearsay rules or by 'a showing of particularized guarantees of trustworthiness.' *Wright*, 497 U.S. at 816, 111 L. Ed. 2d at 653, 110 S. Ct. at 3147.

*** The Court listed some factors to consider when determining the reliability of such hearsay statements, including, but not limited to, (1) spontaneity and consistent repetition, (2) the mental state of declarant, (3) use of terminology unexpected of a child of a similar age, and (4) lack of motive to fabricate. *Wright*, 497 U.S. at 821-22, 111 L. Ed. 2d at 656, 110 S. Ct. at 3150."

We now clarify *Coleman* and *Barger* and expressly hold that section 115—10 incorporates the *Wright* criteria, with the result that—by definition—if the child victim's statement meets the requirements of section 115—10, it also meets all requirements of *Wright*.

In so holding, we reject the analysis asserted in the specially concurring opinion that "the confrontation clause permits hearsay evidence that does not fall within a firmly rooted hearsay exception only when use of that evidence is necessary, only when the declarant is unavailable to testify in court." 285 Ill. App. 3d at 26. The specially concurring opinion quotes a portion of *Wright* (which in turn quoted *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980)) as authority for the assertion that the prosecution must either produce—or demonstrate the unavailability of—the hearsay declarant. However, in *White v. Illinois*, 502 U.S. 346, 354, 116 L. Ed. 2d 848, 858, 112 S. Ct. 736, 741 (1992), written two years after *Wright* and 12 years after *Roberts*, the Supreme Court explicitly overruled *Roberts* on this point, "clarifying" that case as standing "for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding"—which, of course, was the situation in *Roberts* and decidedly not in either *Wright* or this case. Thus, *White* stripped away the *sole* foundation for the specially concurring opinion's analysis—the *obiter dicta* unfortunately inserted into *Roberts*.

Further, attempts to limit *White*'s rejection of *Roberts*' *dicta* on the ground that *White* dealt with *firmly rooted* hearsay exceptions—

spontaneous declarations and statements made to medical personnel—are not persuasive because, throughout *White*'s lengthy analysis rejecting *Roberts,* the Court *never once* mentions the particular hearsay exceptions at issue in *White.* Indeed, in a footnote in *White,* the Court defines the so-called "unavailability rule"—which definition is essentially the same as that asserted in the specially concurring opinion—and then provides several reasons why "there is little benefit, if any, to be accomplished by imposing an 'unavailability rule.'" *White,* 502 U.S. at 354 & n.6, 116 L. Ed. 2d at 858 & n.6, 112 S. Ct. at 742 & n.6.

Section 115—10(b) provides that certain evidence shall be admitted as an exception to the hearsay rule under the following circumstances:

"(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." 725 ILCS 5/115—10(b) (West 1992).

As we have indicated, the State, as the proponent of these statements, bears the burden of establishing they were reliable and not the result of adult prompting or manipulation, and we will not reverse a trial court's determination unless the court abused its discretion (*Zwart,* 151 Ill. 2d at 43, 44, 600 N.E.2d at 1171, 1172).

Here, Devall and Deerwester interviewed J.P. at the sheriff's office after interviewing her earlier that same day; the second interview contained numerous leading and suggestive questions. Although Devall interjected comments such as "remember what you said earlier," he also frequently refused to accept J.P.'s initial response and suggested answers. As one example, Devall questioned J.P. about how defendant touched her on one occasion:

"Q. So, daddy's private touched your private? Was it on the outside of the clothing or the inside of the clothing?

A. Outside.

Q. O.k., did it touch it on the inside too? How did daddy's private touch your private? Was it a poke or was it a rub or what, what kind of a touch was it?

A. Poke.

Q. Did daddy's private go inside of your private? I can't hear you honey.

A. Yes."

As another example, Deerwester and Devall asked J.P. if defendant touched her with his penis:

"Q. [Deerwester]: Did you[r] daddy's private part ever touch your private part?

A. I don't know.

Q. You don't know if it did or not? Did you ever see daddy's private part touch your sister[']s private part?

A. I don't know about that one either.

Q. [Devall]: Would you remember something like that if it happened? Do you think it happened or did it not happen? Do you remember what you told us earlier?

A. I think it did.

Q. Did you see it happen? Use your words honey. Did you see it happen?

A. Yeah."

In addition, J.P. did not make any out-of-court statements spontaneously. It was only after her mother's then-boyfriend contacted DCFS that J.P. made incriminating statements during questioning by Devall and Deerwester. J.P.'s statements at the sheriff's department also contained inconsistencies: (1) at one point Devall asked J.P. whether she remembered a time that defendant touched H.P. in the kitchen, and J.P. responded that she did not; later, Devall asked J.P., "Did you see it happen in the kitchen once too?," and J.P. responded that she had; (2) Devall asked J.P. if she had ever seen anything come out of defendant's "private," and J.P. answered "[w]hite stuff, sticky stuff"; Deerwester then asked J.P. when she had seen it, and J.P. said that H.P. had told her about it; and (3) Deerwester asked J.P. if defendant's "private" ever touched J.P.'s "private part," and J.P. said she did not know; eight questions later, Devall asked J.P. the same question, and J.P. said no; Devall then said, "[y]ou don't remember that. *** You remembered one time that that happened. Did that happen?," and J.P. responded, "Yeah."

Regarding the descriptive terms used by J.P., in response to all but one question at the sheriff's office, J.P. referred to her vagina as her "private," or private area or part (terms indicative of a young girl not versed in the nomenclature of bodily organs); however, in response to one of Deerwester's questions regarding what she called her part "[d]own below," J.P. responded, "Vagina. Vagina."

Viewing the totality of the circumstances surrounding the statements J.P. made at the sheriff's department—in particular, the frequent leading and suggestive questions—we conclude that the State failed to show the statements possessed sufficient "safeguards of reliability" under section 115—10 of the Code. Accordingly, we hold that the trial court abused its discretion by admitting the audiotape, which precludes its admission on remand.

We note in passing that the trial court itself did not find statements made by J.P. at the sheriff's department to be reliable. The court stated, "I could find that the leading nature of those questions asked at that interview is such to cast doubt on the reliability, but I think the defense would probably want those." Although the court may have believed it was benefitting defendant by admitting the audiotape, it should not have done so *over defendant's objection*. If defendant wanted the jury to hear the audiotape, *he* could have offered it.

## IV. CONCLUSION

For the reasons stated, we reverse and remand for a new trial consistent with the views expressed herein.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE COOK, specially concurring:

I disagree with the statement in the majority opinion that if a statement "meets the requirements of section 115—10, it also meets all requirements of *Wright*." 285 Ill. App. 3d at 23.

In *Wright*, quoting *Roberts*, the court noted that the confrontation clause operates in two separate ways to restrict the range of admissible hearsay.

" 'First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' *Ibid.* (citations omitted). Second, once a witness is shown to be unavailable, 'his statement is admissible only if it bears adequate "indicia of reliability." ' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.' " *Wright*, 497 U.S. at 814-15, 111 L. Ed. 2d at 651-52, 110 S. Ct. at 3146, quoting *Roberts*, 448 U.S. at 65, 66, 65 L. Ed. 2d at 607, 608, 100 S. Ct. at 2538, 2539.

In my view, the confrontation clause permits hearsay evidence that does not fall within a firmly rooted hearsay exception only when use of that evidence is necessary, only when the declarant is unavailable to testify in court. A declarant is unavailable where the declarant is present but incapable of communicating with the jury. *Wright*,

497 U.S. at 816, 111 L. Ed. 2d at 652, 110 S. Ct. at 3147. Section 115—10 of the Code does not contain any corresponding limitation on the use of hearsay evidence to cases where there is a necessity for such evidence. Under section 115—10, any number of witnesses may testify to what the child told them out of court even if the child testifies fully and freely in court. See *Barger,* 251 Ill. App. 3d 448, 624 N.E.2d 405. Accordingly, I disagree that compliance with section 115—10 insures there will be compliance with the confrontation clause.

In *White,* the Court considered whether the confrontation clause required that before a trial court admits testimony under the "spontaneous declaration" and "medical examination" exceptions to the hearsay rule the prosecution must either produce the declarant at trial or the trial court must find that the declarant is unavailable. Disclaiming any intent to establish a wholesale revision of the law of evidence under the guise of the confrontation clause, the Court refused to impose any such requirement. "[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White,* 502 U.S. at 356, 116 L. Ed. 2d at 859, 112 S. Ct. at 743. Spontaneous declarations and statements made in the course of receiving medical care are made in contexts that provide substantial guarantees of their trustworthiness. *White,* 502 U.S. at 355, 116 L. Ed. 2d at 859, 112 S. Ct. at 742.

Section 115—10 is not a firmly rooted exception to the hearsay rule, and *White* accordingly provides no justification for allowing the admission of hearsay statements under section 115—10 when the child declarant testifies fully and freely in court.